GAYNELLE WILSON, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR FREDERICK WILSON, A MINOR, PLAINTIFF, v. UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided September 3, 1985.

*Michael J. Waldman* for Plaintiff (*Ferrara and Waldman, P.A.,* attorneys).

*John P. Montemurro* for Defendant (*Tomlin, Clark and Hopkin,* attorneys).

HAINES, A.J.S.C.

The question before the court is whether a passenger in an uninsured automobile, struck by an insured vehicle, may recover medical expenses from the Unsatisfied Claim and Judgment Fund (UCJ) without first obtaining and exhausting efforts to collect the expenses from the insured driver or owner. The only reported decision of this issue, *Pearman v. Unsatisfied Claim and Judgment Fund Bd.,* 185 *N.J.Super.* 397 (Law Div.1982), required exhaustion. This opinion reaches the opposite conclusion.

Frederick Wilson, age 5, was a passenger in his uncle's uninsured automobile when it was struck in the rear by an insured school bus owned by the Moorestown Township Board of Education. Frederick was injured. He incurred medical expenses which would have been payable under the personal injury protection (PIP or PIPC) provisions of his uncle's policy of insurance, had his uncle been insured. Since he was not,

they are payable by the UCJ, absent some disqualification or exclusion.

Relying on *Pearman,* The UCJ moves for summary judgment on the ground that Frederick has no claim against the Fund because he can recover his losses from an insured defendant, the Moorestown Board of Education. Frederick cross moves for summary judgment on the ground that *Pearman* is wrong. There are no factual disputes and this opinion disposes of the litigation.

## A. *The Statutes*

We are concerned here with the two statutes: The Unsatisfied Claim and Judgment Fund Law, *N.J.S.A.* 39:6-61, *et seq,* adopted in 1952, and The New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A-1, *et seq,* known as the "No Fault Law", effective June 20, 1972. The compulsory insurance, PIP coverage benefits and tort exemption provisions of the No Fault Law became mandatory on January 1, 1973. The Unsatisfied Claim and Judgment Fund statute was amended by *L.* 1972, c. 198 to match the mandatory insurance provisions of the No Fault Law, making both effective on January 1, 1973. That is the date on which *N.J.S.A.* 39:6-86.1 and *N.J.S.A.* 39:6A-4, of special interest here, became effective. The provisions of their initial paragraphs reveal their close connection:

N.J.S.A.39:6A-4

Personal injury protection coverage regardless of fault. Every automobile liability insurance policy insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an automobile accident, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. "Additional coverage" means and includes:

N.J.S.A.39:6-86.1

When any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law," suffers bodily injury or death arising out of the ownership, operation or use of an automobile, as defined in P.L.1972, c. 70, registered or principally garaged in this State for which personal injury protection benefits under the "New Jersey Automobile Reparation Reform Act" would be payable to such person if personal injury protection coverage were in force and the damages resulting from such automobile accident or deaths are not satisfied due to the personal injury protection coverage not being in effect with respect to such automobile accident, then in such event the Unsatisfied Claim and Judgment Fund shall provide, under the following conditions, the following benefits:

There follows, in both sections, a list and description of identical benefits: medical expenses, income continuation, essential services, death benefits and funeral expenses. Both statutes were amended by *L.*1983, c. 362 to add identical language which provides coverage "while occupying, entering into, alighting from, or using an automobile," further proving the symbiotic relationship of the two statutes.

Except for the *Pearman* rationale, it would be clear from these statutory provisions that the Legislature intended the UCJ to pay PIP benefits whenever they would have been payable except for the fact that PIP coverage was not in force. History, logic and language support the conclusion that this *was* the legislative intent.

B. *The Report of the Automobile Insurance Study Commission.*

The Commission's report, entitled *Reparation Reform for New Jersey Motorists* (1971), was the basis of our No Fault

Law. This is clear from the Statement attached to Assembly bill # 667 (the No Fault Law) that: "This legislation encompasses the recommendations of the Automobile Insurance Study Commission...." The release from the office of the Governor after the bill was signed is to the same effect. This is history, a long accepted aid to statutory construction. *State v. Madden*, 61 *N.J.* 377 (1972).

The report recommended the adoption of insurance legislation creating PIP coverages, compulsory insurance, limited tort exemptions and numerous other changes in our insurance laws, including the no fault concept, all of which were enacted. Its recommendations for changes in the Unsatisfied Claim and Judgment Fund law were also enacted. It was clearly the intention of the Commission that the UCJ pay PIP benefits to persons in Frederick's position without first requiring the pursuit of an insured, potentially liable party to an automobile accident. This is illustrated by the following excerpts from the report:

(1) "... all automobile accident injury victims should receive ... first party benefits" consisting of medical expenses, funeral expenses, disability benefits and extra expense reimbursement.

. . . .

"... PIPC benefits shall be payable without regard to collateral sources of benefits which may be available to the injured person. That is, they shall be primary." (at 58–60)

(2) "That to the extent the PIPC benefits paid or payable, an insurer shall be subrogated to the injured person's right of action for damages against culpable third parties and their liability insurers. Determination as to whether any insurer is legally entitled to recover damages in tort from another insurer shall be by inter-company agreement or arbitration.

"That injured persons shall not plead nor introduce into evidence in an action for damages against a tortfeasor those damages for which PIPC benefits are paid or payable." (at 60)

. . . .

"The purpose of the second proviso is ... to reduce costs by eliminating dual recoveries under both first-and third-party settlements through the subrogation device." (at 61)

(3) "No-fault benefits are first-party benefits; that is, they are provided to the motorist and his family by the motorist's own insurance policy."

. . . .

The "only hope of recovery (for the uninsured) ... would be through an action in tort ... (which) would not only defeat the reparation objective; it would also impair the cost and judicial objectives. This is so because the Commission's proposal relies heavily on the prompt provision of no-fault benefits to moderate the pace of tort activity." (at 63–64)

(4) "It is the Commission's hope that its recommended *personal injury protection coverage* (PIPC), which is a mandatory, first-party, no-fault benefit system, will absorb many claims which otherwise would flow into the higher-cost tort benefit system." (at 90)

(5) "The Commission's reparation reform proposal for New Jersey motorists supplements the present tort liability system with a package of first-party benefits. This package carries all injury victims, without regard to fault, a fair and reasonable distance toward their reparation objectives. (at 99)

(6) "The Commission's reform proposal should lighten the modern day version of this same burden appreciably by the prompt and fair reparation of medical-disability loss for all victims without regard to fault. That is, in many if not most cases, it will render civil actions for special damages unnecessary, except as under subrogation such actions may be warranted." (at 101)

(7) "The Commission recommends a change in the admissibility of evidence rule to provide that injured persons shall not plead or introduce into evidence in an *action for damages against a tortfeasor those damages for which PIPC* benefits are available. This rule will effectively prevent duplicate recovery in cases tried in the courts, in congruence with the recommended subrogation procedure in cases settled outside the courts. Further, the prohibition on presenting to the courts evidence as to amounts of indemnity already obtained under PIPC benefits will have the effect of leveling the size of verdicts or settlements." (at 103)

(8) "... the injured person may not effect a double recovery under both no-fault and tort."

(at 117)

(9) Recommendation: "Modification of the Unsatisfied Claim and Judgment Fund to provide no-fault benefits." (at 156)

It is clear from the summary of the Commission's recommendations that these benefits were to include PIP coverage. Recommendations 6 & 7 called for modification of the UCJ law "(t)o provide first-party benefits in accordance with section 2.0 above...." Recommendation 2.0 called for compulsory automobile liability insurance. Recommendation 1 was that "(a)ll compulsory automobile insurance policies as defined in section 2.0 above, shall include, *personal injury protection coverage* (PIPC) providing for the prompt payment on a first-party basis, and without regard to fault or negligence liability of ... benefits...." (xv, xii & x)

The Commission thus stressed, again and again, its requirement that PIP benefits be paid promptly without regard to fault and without any opportunity to collect them a second time

through a tort action against other parties to an accident. The fact that other parties may be responsible and may be insured has nothing to do with these concepts, and, if made conditions to PIP payments, would be entirely contrary to the Commission's recommendations. The report also said that insurers who paid such benefits should recover them through the right of subrogation, a right which would be of little moment if accident victims were required to exhaust collection efforts before insurers had any obligation to pay. Finally, the UCJ, through modification of its statutory authority, was to "provide no fault benefits".

It was these recommendations which the Legislature considered—and adopted—when, in 1972, it passed the No Fault Law and amended the UCJ law to match. The matching was not only intended but accomplished as may be seen from an analysis of the statutes themselves.

### C. *The Content of the Statutes*

The UCJ statute, *N.J.S.A.* 39:6–86.1, is entitled: "Benefits payable in accordance with Automobile Reparation Reform Act: exceptions." The PIP benefits payable by the UCJ when not provided by insurance are then listed. The title of the statute is more than the first clue to intent: it correctly describes the coverage which the UCJ must provide, coverage which pays the same PIP benefits as the No Fault Law.

The 1972 amendments of the UCJ, enacting *N.J.S.A.* 39:6–86.1 and 39:6–86.5, clearly express the purpose of providing prompt payment of PIP benefits to automobile accident victims previously denied those benefits in circumstances like Frederick's. Section 86.1 requires the UCJ to pay them when damage claims "are not satisfied due to the personal injury protection coverage not being in effect...." Section 86.2 requires payment "as the loss accrues." Section 86.5 requires payment to qualified persons entitled to Section 86.1 benefits *"as the loss accrues,* upon receipt of reasonable proof of such loss and

*without the need of a judgment as to damages, or a hearing"*
as otherwise required by *N.J.S.A.* 39:6–70 or for an order for
payment as required by *N.J.S.A.* 39:6–71. (Emphasis supplied.)
The intent to have the UCJ pay PIP benefits to accident victims
without having such payment await any judgment or attempted
collection process seems very obvious. Section 86.5 certainly
says so.

The judgment-collection process can be a very long one.
Reaching trial often takes more than two years from the time
of the accident. Appeals may delay collection for at least
another year. Collection efforts may impose further delay.
Questions of liability are present in most cases so that insurers
ultimately liable frequently withold payment until defense ef-
forts have been exhausted. One purpose of the No Fault Law,
pursuant to the Study Commission's recommendations, was to
avoid such delay with respect to the payment of medical ex-
penses and other PIP benefits. Thus, *N.J.S.A.* 39:6A–5 re-
quires the payment of these benefits within 30 days of notice of
the loss. The UCJ amendments were enacted simultaneously
with this and with all other sections of the No Fault Law.
Surely the Legislature intended them to be read together.

Section 86.1 further underlines this intent and, by omission,
its elimination of any non-insurance, judgment or collection
requirement. Originally, it said that payment of PIP benefits
was subject to proof that certain conditions were met. The
conditions were among those listed in *N.J.S.A.* 39:6–70, but did
not include proof that the judgment debtor was uninsured or
that judgment collection efforts had been exhausted. The 1983
amendment to Section 86.1 did not change these requirements.
Consequently, the legislation, by its omission of these condi-
tions, must be read as requiring the UCJ to pay PIP benefits
regardless of the existence of insurance or the lack of judgment
collection efforts.

The director is protected in making PIP payments. *N.J.S.A.*
39:6–77 requires an applicant for benefits to assign any judg-

ment held by the applicant to the director before payment is made. *N.J.S.A.* 39:6–86.6 also provides:

> The director shall be entitled to recover on behalf of the Unsatisfied Claim and Judgment Fund for all payments made by it pursuant to (Sec. 86.1) ... regardless of fault, from any person who owned or operated the automobile involved in the accident and whose failure to have the required insurance coverage in effect at the time of the accident resulted in the payment of personal injury protection benefits....

Thus, if the person who failed to have PIP coverage has a claim for damages arising from the accident, the director could recover PIP payments advanced by the Fund from the proceeds of that claim.

It should be noted, however, that the Legislature has not provided the Fund with any right of subrogation for payments made to persons in Frederick's position, as it has for insurers under *N.J.S.A.* 39:6A–9.1. This right may have been omitted because the UCJ's annual budget requirements are met by contributions from insurers, mandated in accordance with a formula based upon premiums received. *N.J.S.A.* 39:6–63. If the director had a right of subrogation, the Fund would be entitled to make recoveries from those insurers who had already contributed monies to the Fund to cover such losses.

A final note completing the orchestration of the UCJ statute is provided by Section 70(f) of that law. It requires the "judgment debtor" to be uninsured. Under Section 86.5 benefits are payable without a judgment condition therefore eliminating any "judgment debtor." If Section 70(f) nevertheless applies, it contradicts Section 86.5. This is not the way to interpret statutes. They are to be construed harmoniously; contradiction is to be avoided whenever possible. *Loboda v. Clark Twp.*, 40 *N.J.* 424 (1963).

The language of these sections of the UCJ and No Fault laws as well as their obvious mutuality, point to a clear legislative intent that the Fund is not to withhold PIP payments until insured drivers, potentially liable for injuries resulting from an accident, have been so found.

Some point might be made of the fact that Section 86.1 requires the UCJ to pay when PIP benefits "would be payable ... if personal injury protection coverage were in force and the *damages* resulting from such accident or death are not satisfied." (Emphasis supplied.) The use of the word "damages" instead of "benefits" could be misread as requiring an effort to collect damages before PIP benefits become payable. A fair reading of the entire passage, however, makes it clear that "damages" refers to PIP benefits since the passage continues by conditioning the failure to satisfy damages upon the fact of "personal injury protection coverage not being in effect...."

*Pearman*

*Pearman* held that *N.J.S.A.* 39:6–70 applied to claims made against the UCJ. For that reason the Fund is not obliged to pay if a responsible driver, *e.g.*, one that is insured, is involved in the accident. The court based its opinion on the following analysis: Section 86.1 of the UCJ permits only a "person qualified" to receive such payments. A footnote to the section refers to "the entire" UCJ law. Consequently, the court found, a "person qualified", in order to be qualified, must satisfy all conditions imposed by the UCJ law, including the conditions imposed by Section 70, one of which is that the person responsible for the accident must be uninsured.

This reasoning was buttressed by an analysis of the words "person qualified". *N.J.S.A.* 39:6–62 provides that a resident of this State is a "qualified person" within the UCJ law. Section 86.1 reverses these words, using "person qualified." *Pearman* finds this reversal significant: "If the Legislature had meant that a party seeking to recover PIP benefits under *N.J.S.A.* 39:6–86.1 need only be a "qualified person" pursuant to the definition in *N.J.S.A.* 39:6–62, they would have used those exact words." (185 *N.J.Super.* at 401) It held that the reversal "was designed to incorporate all of the pre–1972 claim requirements into the 1972 amendment." (*Id.*)

These conclusions are contrary to the No Fault—UCJ concepts contained in the report of the Study Commission and in

the 1972 statutes themselves, as pointed out above. They do not effectuate legislative intent. The use of a footnote to bring the entire UCJ law into the meaning of Section 86.1 clearly overemphasizes the weight to be given a simple reference. The word reversal, read reasonably, is merely grammatical. For example, the beginning of that section is: "When any person qualified to receive payments...." It could not acceptably read: "When any qualified person to receive benefits...."

When *L.*1972, c. 198 is read as a whole, one finds that the Legislature used "person qualified" in Section 7 (39:6–86.1) but used "qualified person" in Section 9 (39:6–86.3), which refers back to Section 7 and used the latter phrase again (twice) in Section 11 (39:6–86.5). It is hard to believe that the Legislature would attach a difference in meaning as significant as that suggested by *Pearman* to a mere transposition of words, especially one which is not uniform.

For these reasons, this court must disagree with *Pearman.* Frederick is entitled to be paid the PIP benefits which he claims on presentation of proper proofs.