638 A.2d 1389

LIBERTY MUTUAL INSURANCE CO., PLAINTIFF, v.
SELECTIVE INSURANCE CO., DEFENDANT.

Superior Court of New Jersey
Law Division Union County

Decided January 5, 1993.

*John E. Lamastra,* for Plaintiff (*Methfessel & Werbel,* attorneys).

*Robert A. McLarty, Jr.,* for Defendant (*Carson & Astorino,* attorneys).

ALLEY, J.S.C.

A. *Introduction:*

Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"), seeks summary judgment against defendant Selective Insurance Co. ("Selective"), which opposes the motion and seeks summary judgment in its favor on the same issue by way of cross-motion.

After a motor vehicle accident between insureds of Liberty Mutual and Selective, Liberty Mutual paid personal injury protection benefits ("PIP") to its insured. The full amount of the tortfeasor's underlying primary coverage having been exhausted, Liberty Mutual now seeks reimbursement from Selective, the excess carrier of the tortfeasor. This relief is invoked under *N.J.S.A.* 39:6A–9.1, which provides for reimbursement of those expenses on a direct insurer-to-insurer basis. The question presented is whether an "insurer" liable under that statute includes the wrongdoer's excess carrier if its primary coverage has been exhausted. This opinion decides that the excess carrier is liable as an "insurer." No other reported case has decided this issue, although one unreported recent Law Division decision reached a contrary result.

## B. *Facts:*

On August 3, 1987, Charles R. Self was travelling west on Warwick Turnpike in West Milford, New Jersey, when an east-bound dump truck operated by Thomas E. Thoenil crossed into the westbound lanes and collided with Self's vehicle, resulting in Self's death.

An automobile insurance policy was issued to Self by Liberty Mutual. The dump truck's owner was Harry A. Kimbell & Son, Inc., which had primary automobile liability coverage through a policy issued by American Reliance Insurance Company and excess coverage under a policy issued by Selective.

The tortfeasor was not required to maintain PIP coverage on its dump truck. In accordance with recognized procedures under *N.J.S.A.* 39:6A–9.1, therefore, Liberty Mutual filed a claim for reimbursement of its insured's PIP expenses against American Reliance in intercompany arbitration. On June 1, 1990, an arbitration award of $10,590.00 was entered in favor of Liberty Mutual on that claim. American Reliance informed Liberty Mutual, however, that it had already paid out its liability limit of $1,000,000.00 under its primary policy and therefore refused to pay the PIP expenses. Liberty Mutual then sought payment from the tortfeasor's excess carrier, Selective, but Selective refused to make payment, asserting that as the issuer of an excess policy it was not obligated to reimburse Liberty.

## C. *Discussion:*

■ This motion for summary judgment pursuant to *R.* 4:46 involves an issue that is entirely a legal question, namely, Liberty Mutual's right, if any, to reimbursement under the governing statute against the excess carrier, Selective, for the PIP benefits. Liberty Mutual claims that *N.J.S.A.* 39:6A–9.1 gives it a statutory right to PIP payment reimbursement against the excess coverage issued by Selective. The statute provides in relevant part:

> An insurer paying personal injury protection benefits … as a result of an accident occurring within this State, shall … have the right to recover the amount of

payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection ... coverage.... In the case of an accident occurring in this State involving an insured tortfeasor, the determination ... shall be made against the insurer of the tortfeasor....

Selective contends that the reference to the tortfeasor's "insurer" in the statute does not apply to the issuer of a policy for excess coverage over and above the underlying primary automobile liability policy.

An insured commercial tortfeasor cannot be sued for PIP reimbursement pursuant to *N.J.S.A.* 39:6A–9.1. *Sherman v. Garcia Construction, Inc.* 251 *N.J.Super.* 352, 356, 598 *A.*2d 242 (App.Div.1991). Selective takes a position one step beyond *Sherman.* It points out that its policy is a so-called "indemnity policy" for the benefit of insured persons who are legally responsible for damages because of "personal injury" arising out of an occurrence. The contrast between liability and indemnity policies was referred to in *Continental Oil Co. v. Bonanza Corp.,* 677 *F.*2d 455 (5th Cir.1982), as follows:

In a liability contract, the insurer agrees to cover *liability* for damages. If the insured is liable, the insurance company must pay the damages. In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured that the insured is liable to pay and has paid. An indemnity policy covers only the insured's actual expenses.

[*Id.* at 459.]

Selective claims that it must prevail because its policy obligates it, not to pay damages to a claimant, but only to indemnify the insured for its ultimate net loss. It reasons that because under *Sherman, supra,* its insured itself cannot be held liable, to require Selective to reimburse Liberty Mutual would be contrary to the scope of its "indemnity" policy, and thus Selective is not within the scope of the statutory term "insurer." Selective's assertions must be examined in the context of the legislation before the court.

The Legislature has provided, in cases where the tortfeasors were "not, at the time of the accident, required to maintain PIP coverage,"—typically, commercial vehicles—that the onus of PIP payments is to be shifted from the victims to the wrongdoers. To

implement this policy, the statute requires the victim's insurance provider to obtain reimbursement directly from the wrongdoer's insurance provider. It must have been within the Legislature's contemplation that accident victims would pay increased premiums to cover the burden of the PIP expenses borne by their insurance providers for accidents throughout the state, when it decided to shift the responsibility for those expenses. The Legislature has implicitly declared through the statute that the burden belongs to the tortfeasors, not the victims. To shift financial responsibility to the wrongdoers' insurance providers ultimately shifts the costs to the wrongdoers themselves.

Selective's argument is persuasive in a hypertechnical sense only. Looking to the substance, it is evident that *Sherman* nowhere immunizes an excess carrier from the statutory mechanism.[1] The Appellate Division held, to be sure, that the tortfeasor cannot be proceeded against directly by the victim's carrier. It is undeniable as well that under *Sherman*, the tortfeasor has "no personal liability for reimbursement of PIP benefits." 251 *N.J.Super.* at 354, 598 *A.*2d 242. But the Appellate Division expressly recognized that the legislative policy (embodied in the same statute as governs here) is "to protect small commercial operators from the danger of being rendered insolvent by being held liable for large PIP reimbursement claims that sometimes arise from catastrophic injuries." 251 *N.J.Super.* at 357, 598 *A.*2d 242. And the Appellate Division has also noted that the very purpose of an umbrella policy is "to guard against a much less frequent catastrophic loss." *Stiefel v. Bayly, Martin & Fay,* 242 *N.J.Super.* 643, 653, 577 *A.*2d 1303 (App.Div.1990).

---

[1] Selective suggests that its contentions were accepted in an unreported opinion in *Harrington, et al v. Selective Insurance Co. of America, et al.* No. HNT–L–1067–91 (Law Div. Hunterdon County Sept. 25, 1992). But upon consideration of all the arguments presented, and with deferential attention to *Harrington,* this Court has decided that summary judgment should be granted against Selective.

To join Selective in reading into *Sherman* a prohibition on an excess carrier being considered an "insurer" under the statute would carry that decision further than careful analysis supports. To immunize the tortfeasor is not to immunize the coverage when the statute provides for direct collection from the insurer, and *Sherman* should not be so narrowly read.

Nothing in the statute suggests that an excess carrier falls outside the meaning of the plain expression "insurer," and is thereby exempt from the reimbursement requirements of the statute. The statute has, as noted, established a mechanism under which the expenses of PIP benefit liability are shifted from the innocent to those whose actions have given rise to the expense. This shift in responsibility includes an undeniable financial impact on the wrongdoer, for it cannot be expected that insurance providers would willingly continue to absorb these expenses themselves without attempting to pass them along to the wrongdoers, their policy holders, through increased premiums. That the insured tortfeasor cannot be sued directly emphatically does not dictate the conclusion that the tortfeasor is intended to escape responsibility in a broader but economically real sense, because the shifting of the financial burden is precisely the statute's objective. Acting as an "insurer," Selective furnished excess coverage that is an integral part of the wrongdoer's insurance package. If the Legislature had intended to create an exclusion of carriers in Selective's position from the term "insurer," it could have done so, but it did not.

Moreover, Selective's assertion that it did not intend its excess policy to provide coverage in the present situation is not determinative. An insurer's responsibility under a statute cannot be diminished by the insurer's own policy language. *Pasterchick v. Insurance Co. of No. Amer.*, 150 *N.J.Super.* 90, 94, 374 *A.*2d 1243 (App.Div.1977). Thus, even if Selective's policy were read as not providing the type of coverage that is in issue here, this would represent no more than an insurer's incorrect reading of its statutory obligations. Selective relies on *Garden State Fire v.*

*Commercial Union,* 176 *N.J.Super.* 301, 422 *A.*2d 1327 (App.Div. 1980), but that case held that excess carriers were not subject to the provisions of *N.J.S.A.* 39:6A–9, the predecessor of 39:6A–9.1, the statute involved here. In contrast to *N.J.S.A.* 39:6A–9, which imposed liability on the wrongdoer through the law of subrogation rather than by statutory authority, *N.J.S.A.* 39:6A–9.1 establishes a statutory remedy. Precedent derived from the *N.J.S.A.* 39:6A–9 must be distinguished as not immunizing a carrier from the liabilities which arise from the current statute.

Finally, Selective's assertions with respect to the Appellate Division's decision in *Stiefel v. Bayly, Martin & Fay, supra,* 242 *N.J.Super.* at 643, 577 *A.*2d 1303, that the "circumstances are the same in the present case," are simply erroneous. There, the carrier prevailed because it had not agreed to insure the risk. In this case, the liability is imposed on the insurer by a statute which only operates when the tortfeasor is "not required to maintain" the applicable coverage. In the presence of coverage, the statutory expense-shifting mechanism does not come into operation. For that reason alone, *Stiefel* is readily distinguishable, because the fact that was conclusive there, lack of coverage, simply begins the analysis here.

■ In short, summary judgment is granted against Selective under *N.J.S.A.* 39:6A–9.1, because the excess carrier of a wrongdoer whose primary level of coverage has been exhausted is an "insurer," and under the statutory procedure the tortfeasor's insurer is liable to reimburse the victim's insurer for the PIP expenses that have been incurred by reason of the wrongdoer's conduct.