649 A.2d 1243

UNSATISFIED CLAIM & JUDGMENT FUND BOARD AND COM-
MISSIONER OF INSURANCE ON BEHALF OF THE UNSATIS-
FIED CLAIM & JUDGMENT FUND BOARD, PLAINTIFFS–
APPELLANTS, v. NEW JERSEY MANUFACTURERS INSUR-
ANCE COMPANY, DEFENDANT–RESPONDENT.

Argued October 11, 1994—Decided November 23, 1994.

*Ralph J. Padovano* argued the cause for appellants (*Beattie Padovano,* attorneys; *Antimo A. Del Vecchio,* on the briefs).

*Brian J. Steller* argued the cause for·respondent (*Connell, Foley & Geiser,* attorneys; *Kathleen M. Cehelsky,* on the letter brief).

The opinion of the court was delivered by

CLIFFORD, J.

The Unsatisfied Claim and Judgment Fund (UCJF or Fund) paid personal-injury-protection (PIP) benefits to passengers in an uninsured automobile that collided with a vehicle insured by defendant, New Jersey Manufacturers Insurance Company (NJM). Thereafter the Fund asserted a subrogation or reimbursement claim against NJM, seeking to recover its PIP payments. The Law Division entered summary judgment for the defendant insurer, and the Appellate Division affirmed, 270 *N.J.Super.* 311, 637 *A.*2d 191 (1994). We granted the Fund's petition for certification, 136 *N.J.* 295, 642 *A.*2d 1004 (1994), and now affirm.

I

On January 7, 1989, Maya Upia and Pura Ventura were passengers in the uninsured vehicle owned and operated by Jose Fernandez when it collided with the automobile of John Zane, insured by defendant, NJM. The accident occurred when Zane, travelling south on Paulison Avenue, Clifton, attempted to make a left-hand turn onto Clifton Avenue and struck Fernandez's northbound automobile.

Upia and Ventura instituted suit against Fernandez, Zane, and the State of New Jersey, Department of Insurance, UCJF, for bodily injuries that they had sustained in the collision. Neither passenger had any insurance available from which to make a claim for PIP benefits or any uninsured-motorist coverage. The Fund agreed to pay Upia's and Ventura's PIP-benefits claims of $1,424 and $3,487.60 respectively, in exchange for the dismissal of the complaint against the Fund and a release of the Fund from PIP-benefits liability, thus preserving any rights of the passengers to proceed against the alleged tortfeasors, Fernandez and Zane.

The Fund then filed this suit against Zane's insurer, NJM, to recover the amount of PIP benefits the Fund had paid to the passengers. On the parties' motions for summary judgment, the Law Division denied the Fund's motion, granted NJM's cross-

motion, and dismissed the complaint. The trial court concluded that the Fund had no right either of subrogation or of reimbursement for PIP payments against a third-party tortfeasor, and that the Fund's remedy was against the uninsured owner of the host vehicle, Fernandez.

In the Appellate Division the Fund argued, as it does here, that the combined effect of *N.J.S.A.* 39:6–86.6 (section 86.6 of the Fund Law), *N.J.S.A.* 39:6A–9.1 (section 9.1 of the No–Fault Law), and dicta in *Wilson v. Unsatisfied Claim & Judgment Fund Board,* 109 *N.J.* 271, 536 *A.*2d 752 (1988), support the conclusion that the Fund has such a right of subrogation or reimbursement. Because the Appellate Division found that neither the statutes nor *Wilson* authorizes that remedy, it affirmed the trial court's order for summary judgment in favor of defendant. 270 *N.J.Super.* at 314, 637 *A.*2d 191.

## II

In view of Justice Garibaldi's comprehensive discussion of the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 to –35 (No–Fault Law), last term for a unanimous Court in *Roig v. Kelsey,* 135 *N.J.* 500, 502–11, 641 *A.*2d 248 (1994), we do not rework that well-ploughed ground. We focus instead on the 1988 version of the statutory provisions, effective January 1, 1989, six days before the accident giving rise to this case. Under the 1988 amendments the "verbal threshold" applied to all insureds unless they elected otherwise, thereby foreclosing those insureds from recovery in tort for noneconomic damages except in nine specified circumstances. *N.J.S.A.* 39:6A–8. *See generally* Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law* § 4:3–5 (discussing 1988 amendments), § 15:3–2 (reviewing rules applying threshold to plaintiffs). Significantly, the "verbal threshold" bound even PIP claimants who had no insurance, such as pedestrians or passengers. *Id.* at § 4:3–5. Therefore, the PIP claimants in this case, the passengers in Fernandez's car who were not required to maintain PIP coverage, were bound by the "verbal

threshold" and thus could not sue in tort for their injuries. *See id.* at § 15:3–2a(7).

■ The UCJF Law, on the other hand, is quite different from the No–Fault Law, both in purpose and effect. Originally enacted in 1952, that Law established the Fund "to provide a measure of relief to persons who sustain losses or injury inflicted by financial-ly-irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless." *Douglas v. Harris,* 35 *N.J.* 270, 279, 173 *A.*2d 1 (1961). "The legislature created the Fund 'to provide the kind of protection a liability insurance policy would provide.'" *Esdaile v. Hartsfield,* 245 *N.J.Super.* 591, 595, 586 *A.*2d 334 (App.Div.1991) (quoting 25 *New Jersey Practice, Motor Vehicle Law and Practice* § 1151, at 3 (2d ed. 1987)), *rev'd on other grounds,* 126 *N.J.* 426, 599 *A.*2d 1254 (1992). However, the statute does not reflect a goal of making every claimant completely whole or compensating all accident victims; rather, it seeks to offer some measure of relief to those who come within the class intended to be protected, to prevent a claimant from being forced to absorb the entire economic loss caused by the accident. *Ibid.*

With the arrival of the No–Fault Law the Legislature built into the Fund Law provisions covering PIP benefits. The sections of the Fund Law concerning the eligibility requirements and proce-dures for collecting PIP benefits from the Fund are *N.J.S.A.* 39:6–86.1 to –86.6. In virtually all respects, the PIP provisions in the Fund Law track those in the No–Fault Law. *See* Craig & Pomeroy, *supra,* at § 31:3–5; *compare N.J.S.A.* 39:6–86.1 (listing available PIP benefits) *with N.J.S.A.* 39:6A–4 (listing available PIP benefits).

### III

■ The Fund relies on section 86.6, "Recovery of benefits paid by Fund," to argue that it may recoup the paid PIP benefits from NJM, "the insurer." That section provides:

> The commissioner shall be entitled to recover on behalf of the [UCJF] for all payments made by it pursuant to sections 7 and 10 of this act, regardless of fault, from any person who owned or operated the automobile involved in the accident *and whose failure to have the required insurance coverage in effect at the time of the accident resulted in the payment of [PIP] benefits.* If the identity of the owner and operator is not ascertained until after [PIP] benefits have been paid[,] then the commissioner shall be entitled to recover for such payments, regardless of fault, from the operator if he was driving without the owner's permission or from the operator and the owner if he was driving with the owner's permission or, in either case, from *the insurer* if there is an insurance policy providing [PIP] benefits that was in effect at the time of the accident with respect to such automobile.
>
> The commissioner is authorized to bring an action, which shall be a summary proceeding, in the Superior Court to reduce the right provided by this section to judgment.
>
> [Footnote omitted, emphases added.]

The statute is clear. Section 86.6 grants the Fund two sources for recovery of PIP benefits that it has paid. The first is from an uninsured motorist—the owner or operator who should have had insurance with PIP coverage and did not, thus resulting in the Fund's paying out PIP benefits. The second is from hit-and-run accidents—the owner or operator whose identity was learned only after the Fund had paid the PIP benefits. *See Sanders v. Hunter,* 253 *N.J.Super.* 666, 671–72, 602 *A.*2d 809 (Law Div.1991); Craig & Pomeroy, *supra,* at § 30:3–4c; Mario A. Iavicoli, *No Fault and Comparative Negligence In New Jersey* § 76 (1973); *see also Wilson v. Unsatisfied Claim & Judgment Fund Bd.,* 213 *N.J.Super.* 594, 602, 517 *A.*2d 1236 (Law Div.1985) (noting that under section 86.6 Fund may recover PIP payments it has advanced), *aff'd,* 213 *N.J.Super.* 520, 517 *A.*2d 1197 (App.Div.1986), *aff'd,* 109 *N.J.* 271, 536 *A.*2d 752 (1988). Section 86.6's reference to "the insurer" at the end of the first paragraph refers to the insurer covering either the owner or operator of the automobile in the hit-and-run accident that the Fund had presumed to be uninsured. That provision ensures that if an insurance policy for the hit-and-run vehicle's owner or operator was in effect at the time of the accident, the Fund may recover the paid PIP benefits from the tortfeasor's insurer under that policy.

In this case, the third-party tortfeasor, Zane, was neither uninsured nor unknown at the time of the accident, and the

insurer, NJM, was not an insurer of a hit-and-run motorist. Therefore, contrary to the Fund's arguments, section 86.6 fails to provide the Fund with a source of recovery.

The Fund also relies on section 9.1 of the No–Fault Law, claiming that it authorizes the Fund to recover the paid PIP benefits from NJM. Section 9.1 begins:

> An insurer, health maintenance organization or governmental agency paying * * * [PIP] benefits * * *, as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain [PIP] * * * coverage, other than for pedestrians, under the laws of this State, * * * or although required did not maintain [PIP] * * * coverage at the time of the accident.

It continues:

> In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer, health maintenance organization or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.

Notably, section 9.1 creates a direct right of reimbursement, not a subrogation right. The right is primary for the injured party's insurer, and the insurer's recovery does not depend on a claim that it acquires from the rights of its insured. *Wilson, supra,* 109 *N.J.* at 280, 536 *A.*2d 752; *Liberty Mut. Ins. Co. v. Selective Ins. Co.,* 271 *N.J.Super.* 454, 458, 638 *A.*2d 1330 (App.Div.1994); *IFA Ins. Co. v. Waitt,* 270 *N.J.Super.* 621, 625, 637 *A.*2d 941 (App.Div.), *certif. denied,* 136 *N.J.* 295, 642 *A.*2d 1004 (1994); *Allstate Ins. Co. v. Coven,* 264 *N.J.Super.* 240, 245–46, 624 *A.*2d 594 (App.Div.1993); *Range v. McLarty,* 246 *N.J.Super.* 196, 199, 586 *A.*2d 1364 (Law Div.1990); *Buoni v. Browning Ferres Indus.,* 219 *N.J.Super.* 96, 99–100, 529 *A.*2d 1044 (Law Div.1987). In addition, the statute allows PIP carriers to recover not from other PIP carriers but from non-PIP carriers and uninsureds.

The requirements for the party invoking section 9.1's reimbursement right are that it be an insurer, health-maintenance organization, or a governmental agency, and that it have paid PIP

benefits as a result of an accident occurring in New Jersey. The Fund clearly satisfies the second criterion; the question is whether the Fund comes within the term "governmental agency."

Although the Fund is linked to the government, it remains independent of it. For example, the Fund Law provides that the UCJF board is "in, but not as a part of, the Department of Insurance." *N.J.S.A.* 39:6–64. The board consists of the Commissioner of Insurance and representatives from four insurance groups. The designated members of the board must be employed by insurers and may not receive any compensation from the Fund. The board must reimburse the Department of Insurance or any other agency that has incurred expenses in performing services for the board. *Ibid.* Moreover, the UCJF receives all its funding from annual assessments on the insurance industry; no public funds are used and the State does not appropriate money to the Fund. *N.J.S.A.* 39:6–63. Yet, the Fund is a creature of the Legislature and its administration and application are dictated by the Fund and No–Fault Laws. In addition, the Fund is "public" in that it is administered and maintained in the public interest.

The legislative history of section 9.1 does not give a clear picture of whether the Legislature meant for the Fund to be eligible for reimbursement for PIP payments. In 1990, the Legislature amended section 9.1 to include health-maintenance organizations and governmental agencies; prior to that time, the statute referred only to insurers. However, in *Wilson, supra,* 109 *N.J.* at 279, 536 *A.*2d 752, and *Sotomayor v. Vasquez,* 109 *N.J.* 258, 269, 536 A.2d 746, both decided in 1988, we found that the availability of a third-party liability action would not in and of itself defeat a claim for PIP benefits from the Fund. Although we recognized that our interpretation might increase the financial burdens of the Fund, we concluded that our decision comported with the policies underlying the No–Fault Law. We also observed that unlike its treatment of insurers, the Legislature had not provided the Fund with a statutory grant or restraint of reimbursement or subrogation from third-party tortfeasors. *Wilson, supra,* 109 *N.J.* at 280,

536 *A.2d* 752. Thus, the 1990 amendment adding "governmental agency" to section 9.1 could be interpreted as a response to *Wilson* and *Sotomayor,* designed to provide the Fund with the reimbursement right. See *Range, supra,* 246 *N.J.Super.* at 199, 586 A.2d 1364. We know of no other "governmental agency" that would be making PIP payments and then looking for reimbursement. On the other hand, if the Legislature had wanted to grant to the Fund the reimbursement right set forth in section 9.1, it could easily have said "UCJF" instead of "governmental agency."

However, to resolve this case we need not determine whether the Fund is a governmental agency within section 9.1, because even if we conclude that the Fund is a governmental agency, section 9.1 does not provide a reimbursement right against PIP carriers situated as is NJM.

The statute provides that an insurer, health-maintenance organization, or governmental agency may recover from any tortfeasor who 1) was not required by law to maintain PIP coverage or 2) although required, failed to carry PIP coverage. *N.J.S.A.* 39:6A–9.1. The first class refers to insured commercial or public vehicles without PIP coverage. (A key limitation of the No–Fault Law is its applicability only to private-passenger automobiles. Craig & Pomeroy, *supra,* at § 1.2–4b(1); George J. Kenny & Frank A. Lattal, *New Jersey Insurance Law,* § 11.4 (1993).) The second class refers to uninsured tortfeasors. The statute further provides that if the tortfeasor is insured, his or her insurer is liable for the PIP-reimbursement payment. Therefore, recovery from an uninsured tortfeasor may be direct, but recovery from an insured tortfeasor must be through his or her insurer. The legislative policy behind shielding commercial tortfeasors from personal liability was " 'to protect small commercial operators from the danger of being rendered insolvent by being held liable for large PIP reimbursement claims that sometimes arise from catastrophic injuries.' " *Liberty Mut. Ins. Co. v. Selective Ins. Co.,* 271 *N.J.Super.* 569, 574, 638 *A.2d* 1389 (Law Div.1993) (quoting *Sherman v. Garcia Constr. Co.,* 251 *N.J.Super.* 352, 354,

598 *A.*2d 242 (App.Div.1991)), *aff'd,* 271 *N.J.Super.* 454, 638 *A.*2d 1330 (App.Div.1994).

That statutory analysis demonstrates that the Fund cannot recover the PIP payments from NJM because Zane does not come within either of the two classes specified by the statute. First, Zane was not one who was "not required to maintain PIP coverage": he operated a private-passenger automobile for which he was required to and did carry PIP coverage. Thus, he does not fall within the first class of tortfeasors liable for reimbursement payments under section 9.1; and because Zane is not a tortfeasor from whom the Fund can recover, NJM, as Zane's insurer, is not "the insurer" from whom the Fund can recover. Second, Zane was not uninsured; hence, he does not fall within the second class of tortfeasors, so the Fund cannot seek reimbursement from him directly. Consequently, the Fund has no reimbursement right against NJM under the circumstances of this case.

The Fund isolates part of section 9.1 to argue that recovery may be had from *any insured tortfeasor,* not just those insured tortfeasors not required to carry PIP coverage. That part of the statute provides: "In the case of an accident * * * involving *an insured tortfeasor,* * * * [recovery] shall be made against *the insurer* of the tortfeasor * * *." (Emphasis added.) By itself, that truncated portion of the statute suggests that recovery is available from *any* insured tortfeasor. However, as the rest of section 9.1 makes clear, the quoted portion relates back to the earlier reference in that section to "any tortfeasor who was not * * * required to maintain [PIP] * * * coverage": those tortfeasors operating commercial or public vehicles that *are insured* but do not have PIP coverage. The statute established a special method of recovery in the case of "an insured tortfeasor" as opposed to those tortfeasors who are completely uninsured. As discussed above, the sentence ensures that the insurers of those insured tortfeasors, and not the tortfeasors themselves, are liable for the payment. Therefore, when read as a whole, the statute provides only two classes from

which recovery may be realized: uninsureds, and insureds not required to carry PIP coverage.

Moreover, the Fund's interpretation of section 9.1 so expands the scope of the reimbursement right that were we to adopt that interpretation, we would substantially alter the legislative intent. The Fund's reading of the statute creates another class from which one can recoup PIP payments—a class of all "insured tortfeasors." Adding that class to section 9.1 would allow reimbursement for PIP benefits paid in almost all accidents because the statute would cover uninsureds, insureds without PIP coverage, and the new class of insureds with PIP coverage. Thus the Fund's interpretation would permit one PIP carrier to recoup PIP payments it had made to its own insured from another PIP carrier for damages that the first carrier's insured had incurred where the second carrier's insured was at fault.

That the Legislature intended that result is implausible for several reasons. First, had the Legislature intended to provide a right of reimbursement against all insured tortfeasors, it would not have inserted the qualifying language in the first sentence following "any tortfeasor," beginning with "who." What follows "who" modifies and narrows the term "any tortfeasor" to two types of tortfeasors without PIP coverage. Moreover, the legislative history shows a conscious decision to eliminate any right of recovery between two PIP carriers. A provision permitting insurers paying PIP benefits to pursue claims against tortfeasors' insurers, originally created in *N.J.S.A.* 39:6A–9, was deemed inefficient, and it expired two years after it had been enacted. Iavicoli, *supra*, at § 50. Lastly, section 9.1 is a fault-based provision in that it allows one carrier to collect from the insurer of the person who was at fault in the accident. The history of the No–Fault Law shows a trend toward eliminating fault-based provisions, see *Roig, supra*, 135 *N.J.* at 502–11, 641 *A.*2d 248; therefore, any provision that contains fault-based concepts was likely intended to extend to only those instances specified in the statute. *See New Jersey Auto. Full Ins. Underwriting Ass'n v. Liberty*

*Mut. Ins. Co.,* 270 *N.J.Super.* 49, 53, 636 *A.*2d 550 (App.Div.1994) ("Since [the section 9.1] right is wholly statutory, it is strictly limited by the terms of the enactment which created it."); *Sherman, supra,* 251 *N.J.Super.* at 356, 598 *A.*2d 242 ("[A]ny right established by section 9.1 must be limited to the plain language of the legislative provision."); *Longworth v. Ohio Casualty Group,* 213 *N.J.Super.* 70, 85, 516 *A.*2d 287 (Law Div.1986) ("A reasonable interpretation of the present § 9.1 is that where the Legislature has deemed to extend such right of subrogation[,] it has done so expressly."), *aff'd,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div. 1988).

Moreover, the cases employing section 9.1 fail to support the Fund's position that it may recover from another PIP carrier. All the cases applying section 9.1 do so in situations in which a commercial vehicle was at fault, and they involve recoupment from a commercial vehicle's insurer. See, *e.g., IFA Ins., supra,* 270 *N.J.Super.* at 625, 637 *A.*2d 941; *Allstate, supra,* 264 *N.J.Super.* at 247, 624 *A.*2d 594; *Sherman, supra,* 251 *N.J.Super.* at 354, 598 *A.*2d 242; *Liberty Mutual, supra,* 271 *N.J.Super.* at 572, 638 *A.*2d 1389; *Hanover Ins. Co. v. Lewis,* 260 *N.J.Super.* 380, 389, 616 *A.*2d 963 (Law Div.1992); *Range, supra,* 246 *N.J.Super.* at 198, 586 *A.*2d 1364; *Buoni, supra,* 219 *N.J.Super.* at 98, 529 *A.*2d 1044. The Fund cites no case allowing an insurer, a health-maintenance organization, or the UCJF to exercise the reimbursement right against the insurer of an operator or owner of a private-passenger automobile.

The only methods for recouping paid PIP benefits from another insurer are through intercompany agreement or arbitration. *New Jersey Auto. Full Ins. Underwriting Ass'n, supra,* 270 *N.J.Super.* at 53, 636 *A.*2d 550. The Fund suggests that it should not be constrained by the requirement of an agreement or arbitration. However, permitting reimbursement rights to be pursued in the courtroom would conflict with the long-standing goal of the No–Fault Law to eliminate litigation wherever possible. The Legislature could not have intended to open up a new avenue of recovery

without also providing that the recovery had to be sought outside the court system. In addition, no reason exists for allowing the Fund to proceed in seeking recovery under section 9.1 in a way that differs from the way those insurers who invoke the same statutorily-derived reimbursement right recover.

IV

We also reject the Fund's argument that it has a common-law right of subrogation. Allowing the Fund to pursue a common-law subrogation claim against another PIP carrier would contravene the legislative history and disrupt the balance established by the No–Fault Law. With the enactment of that Law, the Legislature provided for a subrogation right for insurers to exercise against other PIP carriers whose insureds were at fault in the accident. *N.J.S.A.* 39:6A–9 (section 9) (expired Dec. 31, 1974); Iavicoli, *supra,* at § 50. Significantly, at the behest of the insurance industry, the Legislature provided for section 9, a fault-based provision, to self-expire two years from the effective date of the enactment of the No–Fault Law. Iavicoli, *supra,* at § 50. Despite the attractiveness of recouping PIP payments from a tortfeasor's carrier, the insurance industry doubted the economic benefit of subrogation because it resulted in the increased cost of shifting dollars and papers among the PIP carriers. *Ibid.* The true purpose of the subrogation provision was to ease the transition into a no-fault system and to allow for the compilation of statistics for the rate-making process. *Ibid.* Importantly, the termination of section 9 was not intended to confer on injured persons the right to sue for losses satisfied by PIP payments. *Ibid.; see* *N.J.S.A.* 39:6A–12.

A subrogation right allows the insurer or PIP carrier to step into the shoes of its insured to acquire thereby any cause of action of the insured. Therefore, for an insurer to recover in subrogation under section 9, the tortfeasor's insurer had to be liable to the injured party for PIP benefits. Hence, the injured person had to qualify for PIP benefits under the owner's or operator's policy as

either a family member, a passenger in the insured vehicle, an operator of the insured automobile driving with permission, or a pedestrian. Thus in *Pennsylvania Manufacturers' Ass'n Insurance Co. v. GEICO*, 136 *N.J.Super.* 491, 347 *A.2d* 5 (App.Div.1975), a declaratory-judgment action, the court denied a subrogation claim asserted by the PIP carrier for a passenger in its insured's vehicle. According to the Appellate Division, the subrogation rights found in section 9 were no greater than the rights of the injured party to whom PIP payments had been made. Because the injured party was not entitled to the PIP benefits provided in the tortfeasor's policy—she was not a named insured, a resident family member, a passenger in the insured tortfeasor's vehicle, or a pedestrian—the host vehicle's PIP carrier was not entitled to subrogation in respect of the tortfeasor's PIP coverage. *Id.* at 497–98, 347 *A.2d* 5.

After the fault-based subrogation provision of section 9 expired, an insurer had no statutory basis for recouping from the tortfeasor's carrier or the uninsured tortfeasor the PIP payments it had made to its insured. Craig & Pomeroy, *supra*, at § 14:1. Thus the termination of section 9 effected a bar against subrogation actions between two PIP carriers. *See Cirelli v. Ohio Casualty Ins. Co.*, 72 *N.J.* 380, 385, 371 *A.2d* 17 (1977); *Prudential Property & Casualty Ins. Co. v. New Hampshire Ins. Co.*, 167 *N.J.Super.* 537, 542, 401 *A.2d* 291 (Law Div.1979); *Marriner v. Koenig*, 148 *N.J.Super.* 363, 365, 372 *A.2d* 677 (Law Div.1977). Accordingly, PIP carriers could adjust their rates to reflect the implementation of the no-fault system. Yet, the insurance industry and the Legislature believed that the elimination of the subrogation right as it related to other PIP carriers would have little effect on the insurers' expenses because the cost of paying PIP benefits would likely balance out among them and therefore would keep rates stable. *Prudential, supra*, 167 *N.J.Super.* at 540, 401 *A.2d* 291.

Initially, a line of cases developed permitting PIP carriers to seek subrogation from the insurer of a vehicle not required to maintain PIP coverage in New Jersey. For example, in *Cirelli*,

*supra*, 72 *N.J.* 380, 371 *A.*2d 17, this Court concluded that for out-of-state accidents with foreign vehicles, no statutory policy precluded enforcement of a subrogation provision in an insurance policy. We found that although eliminating subrogation among New Jersey carriers might reduce premiums through reduced administrative costs, that result did not occur when an out-of-state insurer was involved because the out-of-state insurer, having no such similar restriction on subrogation, might exercise its rights against New Jersey carriers. *Id.* at 387, 371 *A.*2d 17. Thus, New Jersey residents could end up subsidizing insurance operations and policyholders of other jurisdictions. *Id.* at 388, 371 *A.*2d 17. Moreover, the Court observed that a foreign jurisdiction might permit an injured party to sue in tort for expenses already received through PIP benefits, thereby allowing a double recovery. *Ibid.* To avoid that result, we concluded that the insurer could seek reimbursement from its insured if the insured sued in tort in New York. *Ibid.*

Other courts also concluded that the bar on subrogation did not apply to cases in which the vehicle at fault was not an automobile required to carry PIP coverage. See, *e.g., Newson v. Hertz Corp.,* 164 *N.J.Super.* 141, 145, 395 *A.*2d 902 (App.Div.1978) (allowing subrogation action against self-insured truck, noting that nothing in No–Fault Law "remotely suggests that an insurer is barred from bringing a subrogation action against the owner or operator of a motor vehicle [that] is not insured in accordance with the provisions of the act"); *Melick v. Stanley,* 174 *N.J.Super.* 271, 277–78, 416 *A.*2d 415 (Law Div.1980) (allowing subrogation against commercial truck without PIP coverage because expiration of section 9 had not effected absolute ban on subrogation in New Jersey; rather, subrogation rights were still in force where accident involved at least one other vehicle other than automobile insured in New Jersey), *aff'd o.b.,* 181 *N.J.Super.* 128, 436 *A.*2d 954 (App.Div.1981); *Marriner, supra,* 148 *N.J.Super.* at 365–66, 372 *A.*2d 677 (permitting subrogation where automobile hit self-insured truck because no-fault goal of parity of losses between insurers otherwise would not be served).

In 1981, however, this Court revisited the subrogation issue in *Aetna Insurance Co. v. Gilchrist Brothers, Inc.*, 85 *N.J.* 550, 428 *A.*2d 1254. Aetna's insured was injured when his car was struck from behind by a commercial truck. After paying PIP benefits to its insured, Aetna asserted a subrogation claim against the truck's insurer. *Id.* at 554–55, 428 *A.*2d 1254. At the time of the accident, section 9 was no longer in effect. *Id.* at 555, 428 *A.*2d 1254. This Court began its analysis by noting that the "underpinning of subrogation is its derivative nature." *Id.* at 560, 428 *A.*2d 1254. Thus, the insurer acquires whatever rights its insured had against a tortfeasor, but no more, and is subject to the defenses the tortfeasor may have against the insured. *Id.* at 560–61, 428 *A.*2d 1254. Concluding that Aetna's insured had no rights against the truck driver to recover expenses for his injuries that had been paid as PIP benefits, we refused to allow subrogation. *Id.* at 562, 428 *A.*2d 1254. The insured had no rights because the evidentiary-exclusion rule of *N.J.S.A.* 39:6A–12 (section 12) bars injured parties from recovering tort damages for amounts collectible or paid under PIP. *Ibid.* In acknowledging the seeming incongruence with section 9, we explained that section 9 had to be considered with section 12.

> When so viewed, it can be seen that the purpose of *N.J.S.A.* 39:6A–9 was to create a limited right of recovery by the insurer paying PIP benefits until December 31, 1974, despite the fact its insured could not otherwise recover the amount of PIP benefits from the tortfeasor. Though section 9 uses the word "subrogation," in fact the right created therein was not one of "subrogation" because the insurer's right did not arise by operation of a provision in the contract of insurance. The insurer did not stand in the shoes of the insured, but was able to obtain recovery of PIP payments only because of section 9.
>
> [*Id.* at 567, 428 *A.*2d 1254.]

Therefore, the expired section 9 had not created a true subrogation right; rather, it had created a temporary exception to section 12's bar against suits for damages collectible or paid as PIP benefits.

Justice Sullivan dissented. He argued that the majority decision would result in "private automobile owners 'subsidizing' the cost of insurance on non-PIP-covered commercial vehicles in this

State" because "the PIP insurer's own customers will ultimately pay, through higher premiums, for tortious conduct by operators of commercial vehicles." *Id.* at 567, 568, 428 *A.*2d 1254. Justice Sullivan pointed out that commercial insurers enjoy subrogation and reimbursement rights under workers' compensation laws, and the workers' compensation carriers are free to seek subrogation or reimbursement from a negligent motorist's automobile insurer, with the result that commercial insurers avoid having to increase the liability rates for their insureds. *Id.* at 568, 428 *A.*2d 1254. Because the majority decision denied automobile-insurance carriers a similar subrogation right against commercial insurers, the imbalance resulted "in higher liability insurance premiums for private automobile owners in the State with a corresponding windfall for commercial vehicle owners." *Id.* at 568–69, 428 *A.*2d 1254. Justice Sullivan would have found that section 9 eliminated all subrogation rights of PIP insurers, "but only where all the insurance carriers involved * * * are subject to the requirements of the No Fault Act." *Id.* at 570, 428 *A.*2d 1254.

As a direct response to *Aetna,* the Legislature enacted *N.J.S.A.* 39:6–9.1. *IFA Ins., supra,* 270 *N.J.Super.* at 625, 637 *A.*2d 941; *Buoni, supra,* 219 *N.J.Super.* at 99, 529 *A.*2d 1044; Craig & Pomeroy, *supra,* at § 14:2. With section 9.1, then, the Legislature adopted the *Aetna* majority's position that creation of any subrogation right would be inconsistent with section 12, and thus enacted a reimbursement right. The Legislature also incorporated Justice Sullivan's concerns regarding the imbalance between private-passenger automobile insurance and commercial-vehicle insurance by allowing PIP carriers to recoup PIP payments from commercial vehicles. However, because of past inefficiencies in the reimbursement process, the Legislature found unnecessary any provision for reimbursement rights as between PIP carriers. See *Liberty Mut., supra,* 271 *N.J.Super.* at 458, 638 *A.*2d 1330 (noting that section 9.1 was designed to reduce cost of private-passenger automobile-insurance premiums by "allowing the PIP carrier to recoup its payments from a commercial liability carrier"); *Allstate, supra,* 264 *N.J.Super.* at 246, 624 *A.*2d 594 (finding

that section 9.1 did not disturb "blanket prohibition on subrogation announced in *Aetna*"); *Longworth, supra,* 213 *N.J.Super.* at 86, 516 *A.*2d 287 (reasoning that section 9.1 did not "overrule *Aetna*" and that it covered commercial insureds).

The foregoing discussion indicates that the Fund clearly does not have a "subrogation" right against NJM. First, as *Pennsylvania Manufacturers'* and *Aetna* explain, subrogation is derivative and the rights of the subrogee are no greater than those of the subrogor. Here, the injured parties were passengers in the vehicle that the Fund covered, and the Fund asserted a subrogation claim against NJM, the insurer of the motorist driving the other vehicle, Zane, who it alleges was at fault in the accident. However, the passengers had no right to collect PIP benefits from Zane or NJM because in respect of the Zane vehicle they did not qualify as family members, passengers, operators, or pedestrians. *See Sotomayor, supra,* 109 *N.J.* at 268–69 & n. 4, 536 *A.*2d 746 (relying on *Pennsylvania Manufacturers'* to conclude that although some plaintiffs may be viewed as " 'slipping between the cracks' of the system, * * * the Legislature had to balance varied interests in developing a system that would provide a high measure of protection in most eventualities"). Likewise, because they were bound by the verbal threshold, the passengers had no common-law tort claim against Zane. Inasmuch as the Fernandez passengers had no statutory or common-law tort rights against NJM, the Fund, as the "subrogee" of the passengers, has no rights against NJM either.

Moreover, the history of the subrogation right indicates that its exercise was deemed inefficient. Elimination of that right was designed to cut costs and keep rates low, a rationale still applicable to the no-fault scheme today. Therefore, revival of a subrogation right in favor of the Fund by this Court would conflict with the goals of the No–Fault Law and would directly contradict the legislative intent. Even when subrogation claims were authorized by statute, they had to proceed through arbitration. One of the unmistakable purposes of the enactment of the No–Fault Law was

to provide some relief to courts overburdened with insurance-related litigation, a goal that remains prominent today. We are fully persuaded that the Fund has no "subrogation" claim against NJM.

The Fund, however, is not without a subrogation remedy: it has a subrogation claim against Fernandez, the uninsured motorist. The passengers in his vehicle would have been entitled to collect PIP benefits under Fernandez's policy had he been insured. Because he was uninsured and the Fund had to pay PIP benefits to the passengers, the Fund may recoup from Fernandez the PIP payments under *N.J.S.A.* 39:6–86.6.

## V

Finally, we address so much of the Fund's argument as relies on our decision in *Wilson, supra,* 109 *N.J.* 271, 536 *A.*2d 752. In *Wilson,* we held that a qualified injured party could recover PIP benefits from the UCJF without first exhausting efforts to collect the expenses in an action directly against the tortfeasor. *Id.* at 279, 536 *A.*2d 752. In recognizing that the Fund's assets would now be consumed at a faster rate, we added, "we do not foreclose by our disposition the possibility that the Fund should appropriately be subrogated to or reimbursed for the injured party's right to recover 'PIP-type' damages from an insured third party." *Ibid.* We noted *Aetna's* restriction on subrogation and the section 9.1 response providing a direct right of reimbursement "against a tortfeasor * * * who was not required to maintain PIP coverage or against a tortfeasor who failed to carry PIP protection." *Id.* at 280, 536 *A.*2d 752. We concluded that "[t]he Fund has no comparable statutory grant or restraint of reimbursement or subrogation against third-party tortfeasors although it has a powerful summary no-fault remedy against the uninsured owner * * *." *Ibid.* Nonetheless, we explicitly stated that we would not resolve the issue in that case. *Ibid.*

The Fund also relies on *Sotomayor,* the companion case to *Wilson,* in which we specifically left it to the Fund to seek

subrogation if the claimant was found to be eligible for benefits. 109 *N.J.* at 270, 536 *A.*2d 752. The Fund also cites *Range, supra,* 246 *N.J.Super.* at 199, 586 A.2d 1364, which permitted the Fund to seek reimbursement under section 9.1.

From those cases, the Fund argues that the courts have recognized the UCJF's rights of subrogation or reimbursement. The Fund observes that because the Fund's assets are held in trust for the benefit of the general public, public policy demands that the Court carefully guard those assets and strive to preserve them through expanding the subrogation and reimbursement rights of the Fund. It argues that it has carried out *Wilson* 's dictates and has properly paid the injured parties in this case and invites the Court to take the next step, which it claims would be to allow the UCJF to recoup those funds from the responsible tortfeasor, Zane, or his insurer, NJM. For several reasons we decline the invitation to create a right of subrogation.

First, the cases on which the Fund relies are distinguishable from this case because none of the vehicles driven by the tortfeasors in *Wilson, Sotomayor,* and *Range*—a public school bus, an out-of-state automobile, and a taxi—was required by law to carry PIP coverage. Therefore, each of those cases falls squarely within section 9.1's right of reimbursement from "any tortfeasor who was not, at the time of the accident, required to maintain [PIP] * * * coverage * * * under the laws of this State * * *." *N.J.S.A.* 39:6A–9.1. Here, the alleged tortfeasor, Zane, drove a private-passenger automobile and was required to and did carry PIP coverage; therefore, he does not fall within that class of tortfeasors.

More importantly, public policy strongly militates against finding a subrogation right for the Fund. The source of the UCJF funding is insurers. Because no taxpayer money goes toward the Fund, the incentive for allowing recoupment dwindles. In addition, the funding structure is organized so that each year insurers "ante up" to the Fund a lump sum according to their market share. To allow the Fund to pursue reimbursement from those

very insurers that already serve as the only source of the UCJF funding seems repetitive and burdensome. The result would be an exchange of a tremendous amount of money and paperwork, only to have the insurers provide the Fund with whatever resources it needs anyway. See also *Wilson v. Unsatisfied Claim & Judgment Fund Board,* 213 *N.J.Super.* 520, 524, 517 *A.*2d 1197 (App.Div.1986) ("[T]he single insurance carrier for a third party is not compelled to carry the burden imposed by the uninsured, but rather the insurance carriers doing business within the State spread that cost through Fund assessment against each carrier * * *."); *Wilson, supra,* 213 *N.J.Super.* at 602, 517 *A.*2d 1197 (noting that omission of Fund from section 9.1 rights may have been because Fund's budget requirements are met by contributions from insurers, and if it could recover, "the Fund would be entitled to make recoveries from those insurers who had already contributed monies to the Fund to cover such losses").

In addition, the exercise of any reimbursement or subrogation right introduces fault into a system designed to limit its role. The Legislature has crafted statutes to balance the competing interests and to move toward the goals it seeks to achieve. In so doing, it has strategically built some fault concepts into the system. One such provision is section 9.1. Uninsured and commercial-vehicle tortfeasors do not share in the costs of maintaining the no-fault system; however, without section 9.1, they would otherwise reap its benefits. That is so because the No–Fault Law forces insurers to pay for their own insureds' expenses and also prohibits injured parties from suing tortfeasors for the same costs, resulting in those tortfeasors avoiding any responsibility for their roles in the accidents. Allowing recoupment simply ensures that the private-passenger automobile insurers do not subsidize other insurers and that those savings are passed on to consumers—the same consumers the No–Fault Law was designed to protect.

As we have observed, one goal of the No–Fault Law is to avoid excessive litigation related to accidents and insurance; the section 9.1 reimbursement right and the section 86.6 subrogation right

requires resolution by intercompany agreement or arbitration. Creation of a common-law subrogation right without a corresponding restriction directing that disputes be settled by arbitration would result in an increase in litigation contrary to the legislative goal.

The no-fault scheme is of legislative design. If the Legislature chooses to create a new right for the Fund, it can do so. Revival of a subrogation right by this Court would most certainly affect that scheme. Any decision to alter the system more appropriately rests with the Legislature.

## VI

Judgment affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, CLIFFORD and STEIN—7.

*Opposed*—None.