271 N.J. Super. 454 (1994)
638 A.2d 1330
LIBERTY MUTUAL INSURANCE CO., PLAINTIFF-RESPONDENT,
v.
SELECTIVE INSURANCE CO., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 10, 1994.
Decided February 28, 1994.
*455 Before Judges J.H. COLEMAN and LEVY.
Carson & Astorino, attorneys for appellant (Robert A. McLarty, Jr., on the brief).
Methfessel & Werbel, attorneys for respondent (John E. Lamastra, on the brief).
LEVY, J.S.C. [temporarily assigned].
This appeal requires us to consider whether a tortfeasor's excess insurer is liable to the victim's automobile insurer for personal injury protection (PIP) benefits paid by the automobile insurer to the victim. We conclude the excess carrier is liable as an "insurer" under N.J.S.A. 39:6A-9.1, and we affirm the order granting summary judgment to plaintiff.
While driving his automobile, Charles Self was seriously injured when he collided with a commercial vehicle driven by Thomas Thoenig, owned by Harry A. Kimble & Sons, Inc. Self was insured by Liberty Mutual Insurance Co. and Kimble had a liability policy, with $1 million maximum coverage, from American Reliance Insurance Co., and an excess policy for liability exceeding $1 million from Selective Insurance Co. Liberty Mutual allegedly *456 paid $13,430 in PIP benefits to Self, and pursuant to N.J.S.A. 39:6A-9.1, sought reimbursement from American Reliance in an arbitration proceeding.
The arbitrator awarded Liberty Mutual $10,590; when asked to pay, American Reliance advised it had exhausted its policy limits of $1 million in settling the basic liability claims for the accident on Kimble's account and could not honor the award. Liberty Mutual then learned of the excess policy Kimble had with Selective, and sought reimbursement from Selective without making any further efforts to collect its arbitration award from American Reliance.
Selective refused, claiming its excess liability policy did not cover such a claim, so the PIP carrier filed an action for damages seeking the $10,590 awarded by the arbitrator on the initial claim against American Reliance, the tortfeasor's primary liability carrier.
This is a statutory cause of action brought under N.J.S.A. 39:6A-9.1 which provides the PIP insurer the right to recover, from the tortfeasor's insurance company, PIP benefits it has paid its insured. That section provides, in pertinent part:
An insurer ... paying ... personal injury protection benefits ... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians... or although required did not maintain personal injury protection ... benefits.... In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover the amount of payments ... shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
Defendant argues, as an excess carrier, it is not "the insurer of the tortfeasor" intended by this legislation, and only insurers issuing policies required by law, such as primary motor vehicle liability policies, are subject to N.J.S.A. 39:6A-9.1. Because no law requires a motor vehicle owner to carry excess insurance, defendant contends excess carriers are not "insurers."
N.J.S.A. 39:6A-9.1 was preceded by N.J.S.A. 39:6A-9 of the original No Fault Act. The two sections must be compared in *457 order to ascertain the legislative intent regarding the meaning of "the insurer of the tortfeasor." The original section created a right to reimbursement by what it called "subrogation," but Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 562, 428 A.2d 1254 (1981), explained the right of reimbursement was not created to place the PIP carrier in the shoes of its insured. Because the insured was prohibited from recovering its medical expenses from the tortfeasor by N.J.S.A. 39:6A-12, Aetna held the PIP carrier was encumbered by the same limitation and did not have a right of action against the tortfeasor by way of subrogation. Instead, N.J.S.A. 39:6A-9 provided the PIP carrier a strictly limited right to reimbursement from the tortfeasor's insurance company, by the following language:
Such ... insurer may only by intercompany arbitration or by intercompany agreement exercise its... rights against only the insurer of any person liable for such damages in tort. ... (Emphasis supplied)
Based on the limited language of N.J.S.A. 39:6A-9, in Garden State Fire and Cas. Co. v. Commercial Union Ins. Co., 176 N.J. Super. 301, 422 A.2d 1327 (App.Div. 1980), we held an excess insurance carrier was not liable for reimbursement of PIP benefits via "subrogation," not due to its status as an excess carrier, but because the excess policy did not provide PIP coverage. Id. at 306, 422 A.2d 1327. We described the insurer against whom the PIP carrier could exercise its statutory right to reimbursement, as follows:
It is only an insurer providing No Fault benefits. This is demonstrated by considering the qualifying phrase that the subrogated insurer may proceed directly against the tortfeasor who failed to have in effect the required No Fault coverage. Obviously, "the insurer" referred to in the preceding phrase of that sentence of the statute is one which provides such coverage. The statute does not speak of "an insurer" or "any insurer." Use of the definite article "the" indicates a particular type of insurer within the contemplation of the act.

[176 N.J. Super. at 307-308, 422 A.2d 1327.]
In part, this conclusion was based on our perception that N.J.S.A. 39:6A-9 was enacted for a limited period of two years, in order to "allow insurers who provide PIP payments to recover them, at least temporarily, as part of the rate-setting process." Id. at 306, *458 422 A.2d 1327. See also Pennsylvania Mfrs. Ass'n. Ins. Co. v. Gov't Emp. Ins. Co., 136 N.J. Super. 491, 499, 347 A.2d 5 (App.Div. 1975), aff'd o.b., 72 N.J. 348, 370 A.2d 855 (1977).
The PIP carrier's right to reimbursement was reinstated nine years later as part of major legislative reforms of the private automobile insurance system. N.J.S.A. 39:6A-9.1 was enacted as part of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984. It is obvious that N.J.S.A. 39:6A-9.1 was designed to overrule Aetna, but it serves a different purpose and has a broader scope than its predecessor. Reimbursement is not limited to arbitration with another carrier providing PIP benefits. Now a direct action is permitted against the insurer of "any tortfeasor who is not, at the time of the accident, required to maintain personal injury protection ... coverage." No longer designed just to compile statistics for rate-setting purposes, the right to reimbursement was recreated by this Act whose principal purpose was to reduce the cost of private passenger automobile insurance by substantially revising the no-fault system. See Governor Kean's Statement to L. 1983, c. 362 (October 4, 1983). We have previously indicated that reimbursement was permitted under N.J.S.A. 39:6A-9.1 from commercial carriers who do not provide PIP coverage. See Sherman v. Garcia Const., Inc., 251 N.J. Super. 352, 598 A.2d 242 (App.Div. 1991); see also Buoni v. Browning Ferres Ind., 219 N.J. Super. 96, 529 A.2d 1044 (Law Div. 1987). Allowing the PIP carrier to recoup its payments from a commercial liability carrier reduces premiums for private automobile insurance, thus advancing a purpose of N.J.S.A. 39:6A-9.1. Consistent with this purpose, reimbursement from "the insurer of the tortfeasor" includes reimbursement from an excess carrier as well as a liability carrier.
Selective also contends N.J.S.A. 39:6A-9.1 is not applicable because its policy only agrees to "indemnify the insured for ultimate net loss in excess of the ... limit ... which the insured may sustain by reason of liability imposed upon the insured...." It also cites a policy exclusion for "any obligation for which the *459 insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law." We ascertain nothing in the coverage language substantially different from any general liability policy; those also agree to "indemnify" the insured against loss. Nor has the exclusion any apparent relevance to defendant's statutory duty to reimburse a PIP carrier. Statutory requirements prevail over policy language. Allstate Ins. Co. v. Malec, 104 N.J. 1, 6, 514 A.2d 832 (1986).
We agree with Judge Alley's analysis of N.J.S.A. 39:6A-9.1 that "the legislature has implicitly declared through the statute that the burden belongs to the tortfeasors, not the victims. To shift financial responsibility to the wrongdoers' insurance providers ultimately shifts the costs to the wrongdoers themselves." We conclude Selective, the issuer of an excess liability policy, becomes an insurer of the tortfeasor when the primary carrier exhausts its limits, and Selective must reimburse Liberty Mutual as required by N.J.S.A. 39:6A-9.1.
Affirmed.