679 A.2d 620

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
PLAINTIFF–RESPONDENT, v. LICENSED BEVERAGE IN-
SURANCE EXCHANGE, DEFENDANT–APPELLANT.

Argued February 14, 1996—Decided July 31, 1996.

*Daniel S. Jahnsen* argued the cause for appellant (*Grossman & Kruttschnitt*, attorneys; *Anthony M. Tracy*, on the brief).

*Brian P. Fleming* argued the cause for respondent (*Maloof, Lebowitz, Connahan & Oleske*, attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

■ The issue raised in this appeal is whether a tavern is a "tortfeasor" under the New Jersey Automobile Reparation Reform Act's reimbursement provision, *N.J.S.A.* 39:6A–9.1, who is potentially responsible for reimbursing personal injury protection (PIP) benefits paid by a private passenger automobile carrier to one of its insureds because of the tavern's negligence.

The trial court, relying on *Allstate Ins. Co. v. Coven*, 264 *N.J.Super.* 240, 624 *A.*2d 594 (App.Div.1993), submitted the issue of reimbursement, pursuant to *N.J.S.A.* 39:6A–9.1, to arbitration. The order requiring arbitration was appealed, and in an unpublished opinion, the Appellate Division affirmed. We granted certification, 142 *N.J.* 516, 665 *A.*2d 1109 (1995), and now affirm.

I

On March 1, 1992, George Schrope and Peter Zoon were patrons of the Boulevard Pub in Hackensack, New Jersey. Both men were served alcoholic beverages while they were visibly intoxicated. Later that evening, Zoon drove himself and Schrope to their mutual residence in Hopatcong. Upon arriving home, Zoon was unable to maneuver his automobile into the garage. In an attempt to be of assistance, Schrope exited the vehicle, and stood in front of it in an effort to direct Zoon into the garage. In the process, Zoon drove the vehicle directly into Schrope, pinning him between the car bumper and the garage entrance, causing severe leg injuries.

As a result of that accident, State Farm Mutual Automobile Insurance Company (State Farm) paid $35,330.72 in PIP benefits on behalf of its insured, Schrope. State Farm instituted the present litigation against Licensed Beverage Insurance Exchange (LBIE), the reinsurer of the Boulevard Pub, to recover those payments pursuant to the PIP reimbursement statute, *N.J.S.A.* 39:6A–9.1.

On March 18, 1994, the trial court heard arguments on an order to show cause why the LBIE should not be required to submit the reimbursement claim to arbitration as required by the reimbursement statute. Summary judgment was granted in favor of State Farm, requiring the LBIE to submit to arbitration. The trial court reasoned, relying on *Coven*, that the statute applies to "any tortfeasor" who may be liable, without limitation.

On appeal, State Farm argued that the language of *N.J.S.A.* 39:6A–9.1 was broad enough to encompass "any and all tortfeasors." The LBIE argued that the phrase was limited to apply only to those tortfeasors who owned commercial vehicles. The Appellate Division agreed with State Farm. It reasoned that "an alternative and more expansive reading of the statute appears to us better to satisfy the legislative concern that the risk be spread to the insurers of all responsible tortfeasors."

## II

This appeal focuses on the scope of the phrase "any tortfeasor ..." set forth in the reimbursement statute. That statute provides:

> Any insurer, health maintenance organization or governmental agency paying ... [PIP] benefits ... shall, within two years of the filing of the claim, have the right to recover the amount of payments from *any tortfeasor who was not, at the time of the accident, required to maintain [PIP] or medical expense benefits coverage other than for pedestrians, under the laws of this State* ... or although required did not maintain [PIP] or medical expense benefits coverage at the time of the accident. In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover the amount of payments and the amount of recovery ... shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
>
> [*N.J.S.A.* 39:6A–9.1 (emphasis added).]

The LBIE argues that its insured, the Boulevard Pub, is not subject to the requirements of the reimbursement statute because the Legislature intended the "any tortfeasor ..." phrase to encompass only those tortfeasors who own commercial vehicles, as set forth in *N.J.S.A.* 17:28–1.3. That interpretation, the LBIE

maintains, becomes manifest when *N.J.S.A.* 17:28–1.3 and *N.J.S.A.* 39:6A–9.1 are read together. State Farm, on the contrary, contends that the "any tortfeasor ..." phrase is not limited to those tortfeasors who own commercial vehicles, but rather applies to any and all tortfeasors.

-A-

When a court is called upon to interpret a statute, certain rules of statutory interpretation may be of assistance. State Farm contends that the "any tortfeasor ..." phrase is unambiguous and should be accorded its plain meaning. *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987); *Renz v. Penn Cent. Corp.*, 87 *N.J.* 437, 440, 435 *A.*2d 540 (1981). Because we are satisfied that the "any tortfeasor ..." phrase is not unambiguous, we must consider other rules of statutory interpretation. *Young v. Schering Corp.*, 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995). "In the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent." *Roig v. Kelsey*, 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994) (citing *Lesniak v. Budzash*, 133 *N.J.* 1, 8, 626 *A.*2d 1073 (1993)). To make that decision, a court should consider the "legislative policy underlying the statute and any history which may be of aid." *Lesniak, supra,* 133 *N.J.* at 8, 626 *A.*2d 1073.

"[A] court should avoid a literal interpretation of individual statutory terms or provisions that would be inconsistent with the overall purpose of the statute." *Young, supra,* 141 *N.J.* at 25, 660 *A.*2d 1153; *Suter v. San Angelo Foundry & Mach. Co.*, 81 *N.J.* 150, 160, 406 *A.*2d 140 (1979). A single statutory term or phrase should be considered as part of the entire statutory scheme rather than in a vacuum. *Maritime Petroleum Corp. v. City of Jersey City*, 1 *N.J.* 287, 298, 63 *A.*2d 262 (1949).

-B-

An understanding of the history of the reimbursement statute is important in defining its scope. In 1972, the State Legislature

enacted the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 to –35, commonly known as the "No–Fault" law. The Act "encompasse[d] the recommendations of the Automobile Insurance Study Commission created under Joint Resolution 4 of 1970." *Gambino v. Royal Globe Ins. Cos.*, 86 *N.J.* 100, 105, 429 *A.*2d 1039 (1981) (quoting *Sponsor's Statement* to *L.* 1972, *c.* 70).

An interpretation of the purpose of the No–Fault law in a later case is informative:

> The Legislature's intent in adopting the act was to provide a means of quickly compensating injured motorists. The tort system was considered to be an inefficient means of compensation since it required expensive and time-consuming litigation, and since it would not compensate drivers whose own fault caused their injuries. The act contemplated the elimination of burdensome administrative and investigative expenses and a consequent lowering of insurance premiums.
>
>  ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊
>
> The intent of the No Fault law is that each automobile insurer should pay the medical expenses of its insured. It is the primary coverage. Substantial savings to insurers and the public were expected to result from the elimination of intercompany litigation.
>
> [*Garden State Fire & Casualty Co. v. Commercial Union Ins. Co.*, 176 *N.J.Super.* 301, 305, 422 *A.*2d 1327 (App.Div.1980).]

Prior to the enactment of the No–Fault law, insurers were free to file suit against other insurers to recover payments for medical expenses based on the common-law right of subrogation. The No–Fault Act was intended to eliminate this type of litigation; however, it did allow for a two-year transition period between 1973 and December 31, 1974, during which time insurers paying PIP benefits were able to recover the PIP costs from the tortfeasor's insured. *Unsatisfied Claim & Judgment Fund Bd. v. New Jersey Mfrs. Ins. Co.*, 138 *N.J.* 185, 197, 649 *A.*2d 1243 (1994).

The reimbursement option was embodied in a temporary provision, *N.J.S.A.* 39:6A–9, now repealed, which provided a limited right to "subrogation" that could be pursued only through arbitration.[1] It was suggested that this two-year period allowing inter-

---

[1] The full text of *N.J.S.A.* 39:6A–9 provided:

company arbitration was necessary to compile information for the rate-setting process. *Pennsylvania Mfrs. Ass'n Ins. Co. v. Government Employees Ins. Co.*, 136 *N.J.Super.* 491, 499, 347 *A.*2d 5 (App.Div.1975) (citing Mario A. Iavicoli, *No Fault & Comparative Negligence in New Jersey* § 50, at 117 (1973)), *aff'd*, 72 *N.J.* 348, 370 *A.*2d 855 (1977). Subrogation was disfavored eventually because "it merely shifted money and paper among insurance companies at additional administrative expense." James W. Kerwin, *Survey of Insurance Law*, 31 *Rutgers L.Rev.* 519, 542 (1978).

*Cirelli v. Ohio Casualty Ins. Co.*, 72 *N.J.* 380, 371 *A.*2d 17 (1977), involved an accident between a New York resident and a New Jersey resident insured under a policy allowing PIP reimbursement. *Id.* at 383–87, 371 *A.*2d 17. Cirelli, the New Jersey resident, was paid PIP benefits by his carrier and then instituted suit in New York, seeking to recover as part of his damages the PIP payments. His insurance policy, however, contained a right of subrogation for PIP payments. The accident occurred on March 1, 1974, and the two-year statutory right of subrogation did not expire until December 31, 1974. *Id.* at 383, 385, 371 *A.*2d 17. Cirelli sought a judgment declaring that the right of subrogation in the policy was invalid. *Id.* at 384, 371 *A.*2d 17. Although the statutory procedure for resolving the issue was intercompany arbitration, the Court concluded that the intercompany arbitration requirement was not enforceable because the Legislature did not have the "power to compel an out-of-state insurer covering an out-

Any insurer paying benefits in accordance with the provisions of section 4 and section 10, [PIP] coverage, regardless of fault, shall be subrogated to the rights of any party to whom it makes such payments, to the extent of such payments. Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. The exemption from tort liability provided in section 8 does not apply to the insurers' subrogation rights. On and after 2 years from the effective date of this act the provisions of this section shall be inoperative.

of-state motor vehicle for tort liability to arbitrate." *Id.* at 386, 371 *A.*2d 17. The Court nonetheless enforced the subrogation right included in the policy pursuant to *N.J.S.A.* 39:6A–9 to prevent Cirelli from obtaining a double recovery for his PIP benefits and to prevent out-of-state insurance carriers from receiving a windfall. *Id.* at 387–88, 371 *A.*2d 17.

*Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 *N.J.* 550, 428 *A.*2d 1254 (1981), involved an accident that occurred on April 5, 1975. *Id.* at 554, 428 *A.*2d 1254. Aetna's insured, the operator of a private passenger automobile, was struck by a tractor trailer owned by defendant and insured by Home Indemnity Co. (Home). *Ibid.* Aetna paid approximately $30,000 in PIP benefits on behalf of its insured and advised Home in August 1975 of its subrogation claim. *Id.* at 555, 428 *A.*2d 1254. Home rejected the claim, asserting there was no legal basis for subrogation. *Ibid.* Thereafter, Home settled the claims of Aetna's insured, and Aetna, as subrogee, instituted suit against the owner and operator of the commercial truck that caused the accident seeking reimbursement of the PIP benefits paid. *Ibid.*

The Court found that Aetna's right of subrogation was derivative in nature and that it obtained "only the rights of the insured against the tortfeasor subject to defenses of the wrongdoer against the insured." *Id.* at 560–61, 428 *A.*2d 1254. The Court concluded that the No–Fault law "has eliminated the ability of the insured in an action in this State to recover damages from the tortfeasor for the amounts collectible or paid under PIP [*N.J.S.A.* 39:6A–12]," Aetna had no right to recover reimbursement from the wrongdoer or his or her carrier. *Id.* at 562, 428 *A.*2d 1254. The Court noted that a PIP-insured's action against the tortfeasor would have constituted a double recovery, as it would have sought payments for the same items that were compensated by PIP coverage. *Ibid.*

Justice Sullivan dissented, arguing that the decision would result in "private automobile owners 'subsidizing' the cost of insurance on non-PIP-covered commercial vehicles in this State"

and that this result was inequitable and in conflict with the premium-reducing objection of the No–Fault law. *Id.* at 567–68, 428 *A.*2d 1254 (Sullivan, J., dissenting). He pointed out that, based on the majority's decision, automobile insurers would be barred from suing any party for PIP costs incurred "regardless of whether the tortfeasor is[:]" (1) a commercial trucker who is not subject to the no-fault law; (2) an out-of-state driver not subject to the no-fault law who negligently causes an accident with a no-fault insured in New Jersey; (3) an uninsured motorist who is required by law to carry no-fault coverage but culpably fails to do so; or (4) a person who does not own an automobile but who causes an accident, such as by throwing a brick through a no-fault insured's windshield. *Id.* at 568 n. 2, 428 *A.*2d 1254.

The majority's response to Justice Sullivan's arguments was that it would be appropriate for the Legislature, rather than the Court, to resolve the imbalance between automobile insurers and commercial-vehicle insurers. *Id.* at 566, 428 *A.*2d 1254.

The Legislature responded fewer than three years later by enacting *N.J.S.A.* 39:6A–9.1 under the "New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984," L.1983, c. 362 (1984 Act), effective October 4, 1983. Section 9.1 granted limited rights of reimbursement to PIP carriers. Rather than reviving the difficulties of subrogation previously identified in *Cirelli* and *Aetna,* section 9.1 provided for a new right of reimbursement that was primary and not linked to any purported subrogation right. *Wilson v. Unsatisfied Claim & Judgment Fund Bd.,* 109 *N.J.* 271, 280, 536 *A.*2d 752 (1988); *Sherman v. Garcia Constr., Inc.,* 251 *N.J.Super.* 352, 356, 598 *A.*2d 242 (App.Div.1991). The legislative intent behind this statute was to alleviate the imbalance identified by Justice Sullivan by reducing the cost of insurance for automobile owners and allowing automobile insurers to recover PIP through reimbursement. *UCJF, supra,* 138 *N.J.* at 201, 649 *A.*2d 1243; *Liberty Mutual Ins. Co. v. Selective Ins. Co.,* 271 *N.J.Super.* 454, 458, 638 *A.*2d 1330 (App. Div.1994); *IFA Ins. Co. v. Waitt,* 270 *N.J.Super.* 621, 627, 637

*A*.2d 941 (App.Div.), *certif. denied,* 136 *N.J.* 295, 642 *A*.2d 1004 (1994); *Tyberg v. Kokinidis,* 283 *N.J.Super.* 84, 92, 660 *A*.2d 1301 (Law Div.1995).

Since the enactment of section 9.1, this Court, as well as others, have acknowledged that section 9.1 partially overrules *Aetna, supra,* in that it " 'confers a primary right of reimbursement on the injured party's insurer.' " *Wilson, supra,* 109 *N.J.* at 280, 536 *A*.2d 752 (quoting *Buoni v. Browning Ferres Indus.,* 219 *N.J.Super.* 96, 100, 529 *A*.2d 1044 (Law Div.1987)); *accord UCJF, supra,* 138 *N.J.* at 191, 649 *A*.2d 1243; *Sherman, supra,* 251 *N.J.Super.* at 356, 598 *A*.2d 242. That right may be exercised against: (1) the insurer of a tortfeasor who was not required to maintain PIP coverage; or (2) a tortfeasor who wilfully fails to carry the requisite PIP coverage, *i.e.,* the uninsured motorist. *UCJF, supra,* 138 *N.J.* at 193, 649 *A*.2d 1243; *see also Liberty Mutual, supra,* 271 *N.J.Super.* at 458, 638 *A*.2d 1330 (acknowledging PIP insurer's entitlement to seek recovery for PIP benefits paid to victim from commercial tortfeasor's insurer and adding that commercial excess liability insurer becomes tortfeasor's insurer when primary carrier exhausts limits); *IFA Ins., supra,* 270 *N.J.Super.* at 622–23, 637 *A*.2d 941 (acknowledging that statute allows PIP insurer to seek reimbursement from tortfeasor's insurer where tortfeasor is commercial-vehicle owner); *Range v. McLarty,* 246 *N.J.Super.* 196, 197, 200, 586 *A*.2d 1364 (Law Div.1990) (holding UCJF had direct right to reimbursement for PIP benefits paid to passenger in uninsured automobile from tortfeasor, a commercial-vehicle owner); *Buoni, supra,* 219 *N.J.Super.* at 97–98, 529 *A*.2d 1044 (acknowledging automobile insurer's right to recover benefits paid to injured insured from tortfeasor where tortfeasor causing accident operated commercial vehicle).

The most significant case interpreting the scope of section 9.1 is the Court's decision in *UCJF, supra.* The issue raised was whether the UCJF was entitled to reimbursement for PIP benefits from a tortfeasor's automobile insurance carrier. In rejecting the argument that the "any insured tortfeasor" language was

broad enough to include insurers of private-passenger automobiles, the Court held the UCJF was *not* entitled to reimbursement under section 9.1 from a tortfeasor's private-passenger automobile insurer. *Unsatisfied Claim & Judgment Fund Bd.*, 138 *N.J.* at 194, 649 *A.*2d 1243. The Court reasoned that the tortfeasor did not fall into either of the two classes of tortfeasors from which an automobile insurer may seek reimbursement, namely: "uninsureds, and insureds not required to carry PIP coverage." *Id.* at 194–95, 649 *A.*2d 1243. The LBIE is an insurer of the Boulevard Pub that is not required to carry PIP coverage.

-C-

Simultaneous with the enactment of *N.J.S.A.* 39:6A–9.1 was the enactment of *N.J.S.A.* 17:28–1.3, which supplements *N.J.S.A.* 17:28–1.1. The new provision provides:

> Every liability insurance policy issued in this State on a motor vehicle, exclusive of an automobile as defined in [*N.J.S.A.* 39:6A–2a], but including a motorcycle, or on a motorized bicycle, insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage sustained by any person arising out of the ownership, operation, maintenance, or use of a motor vehicle or motorized bicycle shall provide personal injury protection coverage benefits, in accordance with [*N.J.S.A.* 39:6A–4], to pedestrians who sustain bodily injury in this State caused by the named insured's motor vehicle or motorized bicycle by being struck by an object propelled by or from the motor vehicle or motorized bicycle.
>
> [*N.J.S.A.* 17:28–1.3.]

The LBIE argues that the simultaneous enactment of *N.J.S.A.* 17:28–1.3, which requires commercial vehicles and other previously non-covered vehicles to carry PIP coverage for pedestrians, indicates that *N.J.S.A.* 39:6A–9.1 was intended to correct insurance irregularities with regard to commercial vehicles. The LBIE also relies on the following language in *N.J.S.A.* 39:6A–9.1: "[a]n insurer ... paying ... personal injury protection benefits ... shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection ... coverage, *other than for pedestrians.*" *N.J.S.A.* 39:6A–9.1 (emphasis added). The LBIE argues that "by including

the phrase 'other than for pedestrians,' the Legislature undoubtedly intended to limit the class of tortfeasors responsible for PIP reimbursement to commercial motor vehicle owners and operators (and to other motor vehicles references in section 1.3) who have insurance coverage." The LBIE relies on *Key Agency v. Continental Casualty Co.,* 31 *N.J.* 98, 155 *A.*2d 547 (1959) in which this Court stated, "[i]n attempting to discover legislative intention in any law, it is proper to consider other laws which pertain to a similar subject matter and especially those which were enacted during the same legislative session as the law in question." *Id.* at 103, 155 *A.*2d 547.

The effect of *N.J.S.A.* 17:28–1.3 is to require insurers of commercial vehicles to provide PIP coverage for pedestrians injured in accidents. Both sections 39:6A–9.1 and 17:28–1.3 were included in the Act to "tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no-fault law." *Statement to Assembly Bill No. 3981,* at 405 (Oct. 4, 1983), *reprinted in N.J.S.A.* 17:28–1.1.

Most of the cases interpreting section 9.1 involve commercial vehicles. *E.g., Otto v. Prudential Property & Casualty Ins. Co.,* 278 *N.J.Super.* 176, 178, 650 *A.*2d 832 (App.Div.1994); *Liberty Mutual, supra,* 271 *N.J.Super.* at 455, 638 *A.*2d 1330; *Waitt, supra,* 270 *N.J.Super.* at 622, 637 *A.*2d 941; *New Jersey Auto. Full Ins. Underwriting Ass'n v. Liberty Mut. Ins. Co.,* 270 *N.J.Super.* 49, 51, 636 *A.*2d 550 (App.Div.1994); *Universal Underwriters Ins. Co. v. Phillips,* 262 *N.J.Super.* 588, 589, 621 *A.*2d 544 (App.Div.1993); *Sherman, supra,* 251 *N.J.Super.* at 354, 598 *A.*2d 242; *Hanover Ins. Co. v. Lewis,* 260 *N.J.Super.* 380, 381, 616 *A.*2d 963 (Law Div.1992), *overruled by IFA Ins. Co., supra,* 270 *N.J.Super.* at 626–27, 637 *A.*2d 941; *Buoni, supra,* 219 *N.J.Super.* at 97, 529 *A.*2d 1044; *see also Martin v. Home Ins. Co.,* 141 *N.J.* 279, 282–83, 661 *A.*2d 808 (1995) (involving Unsatisfied Claim and Judgment Fund); *Molnar v. Hedden,* 138 *N.J.* 96, 98–99, 649 *A.*2d 71 (1994) (involving collision with motorcyclist); *Wilson, supra,* 109 *N.J.* at 272–73, 536 *A.*2d 752 (involving collision between

privately owned vehicle and school bus); *Rowell v. Sluzak*, 206 *N.J.Super.* 210, 211–12, 502 *A.*2d 61 (App.Div.1985) (dealing with nonresident motorist); *New Jersey Auto. Full Ins. Underwriting Ass'n v. Independent Fire Ins. Co.*, 253 *N.J.Super.* 75, 77–78, 600 *A.*2d 1243 (Ch.Div.1991) (same).

*Coven, supra,* on which the courts below relied, is an exception. Rather than a commercial truck owner or operator, it involves a hospital and a physician. *Coven, supra,* 264 *N.J.Super.* at 243–44, 624 *A.*2d 594. Allstate's insured was more than eight-months pregnant when injured in a collision with a flagpole. *Id.* at 243, 624 *A.*2d 594. After the accident, the insured was rushed to a hospital where her son was delivered by caesarean section. *Ibid.* The son suffered severe brain damage and required extensive medical treatment. *Ibid.* Allstate paid over one million dollars in medical expenses to its insured under its PIP coverage. *Ibid.* Allstate alleged malpractice against the doctor and the hospital and sought from them reimbursement of the PIP payments. *Id.* at 244, 624 *A.*2d 594. The Appellate Division held that Allstate did not have a common-law right of subrogation through its insured, but could bring a direct action for reimbursement against the medical tortfeasors pursuant to *N.J.S.A.* 39:6A–9.1. *Id.* at 246, 624 *A.*2d 594.

■ We believe the Legislature intended the phrase "any tortfeasor ..." to have a broad meaning. Because sections 1.3 and 9.1 were enacted together, as part of the same Act, it is appropriate to interpret them *in pari materia.* Both were intended to remedy the problems discussed by Justice Sullivan in his dissent in *Aetna.* The "other than for pedestrians" phrase used in section 9.1 was intended merely to ensure the inclusion of owners and operators of commercial vehicles under the statute, not to exclude all otherwise eligible tortfeasors. If the intent of the Legislature was to limit the application of section 9.1 to cases involving commercial-vehicle tortfeasors, it could have done so with much greater clarity and simplicity than with the language used in the

statute, which apparently was intended to ensure a broad scope of coverage.

In addition, the more expansive interpretation of section 9.1 accords with the statute's legislative history. As expressed by then-Governor Kean, the purpose of the 1984 Act was to "bring about long sought after reductions in premiums for New Jersey motorists." *Statement of Governor Thomas H. Kean* accompanying *L.* 1983, *c.* 362; *accord Liberty Mut., supra,* 271 *N.J.Super.* at 458, 638 *A.*2d 1330. The 1984 Act contained various provisions intended to reduce the premiums paid by owners of private-passenger vehicles. Such provisions included granting insureds the options of having deductibles on their PIP benefits, *L.* 1983, *c.* 362, § 13(a), limiting their right to sue for pain-and-suffering damages resulting from an automobile accident, *id.* § 14, and declining to receive PIP coverage for funeral expenses and lost wages. *Id.* § 13(b).

Section 9.1's right of reimbursement, *id.* § 20, must be understood in the context of the 1984 Act's primary purpose of reducing the cost of insuring private-passenger vehicles. Enabling PIP carriers to seek reimbursement in all cases where the tortfeasor is not subject to the No–Fault law would reduce automobile-insurance premiums and would ensure that the cost of PIP benefits "will be borne by ... the individuals responsible for the injury who, in good conscience, ought to pay them." *Aetna, supra,* 85 *N.J.* at 568 n. 2, 428 *A.*2d 1254 (Sullivan, J., dissenting). Moreover, permitting PIP carriers to assert such reimbursement claims would not be inconsistent with the No–Fault law's primary goal of providing quick compensation to injured motorists. *See Garden State Fire & Casualty Co. v. Commercial Union Ins. Co.,* 176 *N.J.Super.* 301, 305, 422 *A.*2d 1327 (App.Div.1980). Allowing PIP-reimbursement suits to go forward would not delay injured parties' receipt of PIP benefits, but would enable PIP carriers to pass on PIP costs to the parties responsible for the injuries. Also, because such reimbursement suits generally are resolved through arbitration, *see N.J.S.A.* 39:6A–9.1, and are relatively rare (as

revealed by the dearth of reported opinions on point), there is no threat of courts being overrun with litigation by insurance companies seeking PIP reimbursement.

We hold that the reimbursement right conferred by section 9.1 encompasses all tortfeasors that are not subject to the No-Fault law. That interpretation of the statute is consistent with the legislative objective of reducing insurance premiums for owners of private-passenger vehicles. If, however, we have misread the intent of the Legislature, it may readily clarify its intent to limit the reimbursement right as defendant contends.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.