70 A.3d 757

AMERICAN INTERNATIONAL INSURANCE COMPANY OF DELA-
WARE, PLAINTIFF–RESPONDENT, v. 4M INTERPRISE, INC.,
DEFENDANT, AND OCEAN RISK RETENTION GROUP, INC.,
DEFENDANT–APPELLANT, AND NEW JERSEY PROPERTY–
LIABILITY INSURANCE GUARANTY ASSOCIATION AS STAT-
UTORY ADMINISTRATOR OF UNSATISFIED CLAIM AND
JUDGMENT FUND, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 6, 2013—Decided July 18, 2013.

Before Judges GRALL, SIMONELLI and KOBLITZ.

*John M. Bashwiner* argued the cause for appellant (*Bashwiner and Deer, LLC*, attorneys; *Mr. Bashwiner*, of counsel; *Joseph A. Deer*, on the brief).

*Sandra S. Grossman* argued the cause for respondent *American International Insurance Company of Delaware* (*Law Offices of Steven G. Kraus*, attorneys; *Ms. Grossman*, on the brief).

*Mark M. Tallmadge* argued the cause for respondent New Jersey Property–Liability Insurance Guaranty Association (*Bressler, Amery & Ross*, attorneys; *Mr. Tallmadge*, on the brief).

The opinion of the court was delivered by

GRALL, J.A.D.

The Federal Liability Risk Retention Act of 1986 (LRRA), 15 *U.S.C.S.* §§ 3901 to 3906, exempts risk retention groups from many, but not all, state laws regulating insurers. The primary issues on this appeal are whether New Jersey violates LRRA by requiring risk retention groups to provide pedestrian personal injury protection (pedestrian-PIP) benefits in conformity with *N.J.S.A.* 17:28–1.3 or by precluding them from participating in the New Jersey Property–Liability Insurance Guaranty Association (PLIGA), *N.J.S.A.* 17:47A–9, which pays pedestrian-PIP benefits

for commercial liability insurers who are members.[1]  Because LRRA does not exempt risk retention groups from the coverage requirements of a state motor vehicle no-fault insurance law, 15 *U.S.C.S.* § 3905(a), and precludes a state from requiring or permitting a risk retention group to participate in PLIGA, an insurance insolvency guaranty association, 15 *U.S.C.S.* § 3902(a)(2), we reject these claims.

## I

Caple Guthrie, who was insured under an automobile liability policy issued by plaintiff American International Insurance Company of Delaware (AIG), was struck and injured by a taxicab insured by defendant Ocean Risk Retention Group, Inc. (ORRG). AIG paid over $200,000 of Guthrie's medical expenses before realizing that the vehicle involved was a taxi and its insurer, not AIG, was obligated to pay Guthrie's pedestrian-PIP benefits. After discovering its error, demanding payment from ORRG and receiving no response, AIG filed this suit seeking reimbursement from ORRG, defendant 4M Interprises, Inc.—the owner of the taxi insured by ORRG—and, in the event ORRG was not responsible, defendant PLIGA.  Neither AIG nor ORRG filed a cross-claim.

The trial court determined that ORRG, not AIG, owed the pedestrian-PIP benefits, compelled ORRG and AIG to arbitrate ORRG's equitable share pursuant to *N.J.S.A.* 39:6A–11 and dismissed AIG's claim against PLIGA.[2]  ORRG appeals.

---

[1] A communication from the Director of the Division of Insurance in New Jersey's Department of Banking and Insurance to the Director of PLIGA explains that PLIGA is responsible for pedestrian-PIP claims under policies issued pursuant to *N.J.S.A.* 17:28–1.3 by commercial insurers who are members of PLIGA because those members are assessed for the claims.  Because no one disputes that this is the practice or challenges the Director's conclusions, we do not address that issue.

[2] For reasons not clear on this record, the order dismissing PLIGA is "without prejudice pending arbitration of" AIG's claim against ORRG. No party to this

## II

### A

There is no dispute that Guthrie's policy with AIG did not provide pedestrian-PIP benefits. Nor is there any question that ORRG's policy with 4M covered Guthrie's pedestrian-PIP claim.

Pedestrian–PIP coverage in a standard policy of automobile liability insurance applies to an insured or a household member of the insured who sustains "bodily injury ... as a pedestrian, caused by an automobile." *N.J.S.A.* 39:6A–4. But a taxi "used as a public or livery conveyance for passengers" is excluded from the statutory definition of "automobile" under a policy of automobile insurance. *N.J.S.A.* 39:6A–2a; *Jones v. Naser City Transp. Corp.*, 388 *N.J.Super.* 513, 515, 909 *A.2d* 752 (App.Div.2006).

In contrast, policies of "liability insurance ... on a motor vehicle, exclusive of an automobile as defined in [*N.J.S.A.* 39:6A–2a] ... shall provide personal injury protection coverage benefits in accordance with [*N.J.S.A.* 39:6A–4], *to pedestrians who sustain bodily injury in the State caused by the named insured's motor vehicle ....*" *N.J.S.A.* 17:28–1.3 (emphasis added). For the purposes of *N.J.S.A.* 17:28–1.3, the term "motor vehicle" includes taxis. *See N.J.S.A.* 39:6A–2j (assigning "motor vehicle" the meaning given in *N.J.S.A.* 39:1–1—"all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles"—but excluding automobiles as defined in *N.J.S.A.* 39:6A–2a).

The mandatory pedestrian-PIP coverage in both auto and motor vehicle polices is no-fault insurance. It must be provided "without regard to negligence, liability or fault of any kind." *N.J.S.A.* 39:6A–4; *see also N.J.S.A.* 17:28–1.3 (requiring pedestrian-PIP coverage "in accordance with *N.J.S.A.* 39:6A–4"); *State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch.*, 146 *N.J.* 1,

---

appeal contends that the order is not appealable as of right, and it appears that it is. *R.* 2:2–3(a).

12, 679 *A.*2d 620 (1996) (noting that the Legislature required pedestrian-PIP coverage in *N.J.S.A.* 17:28–1.3 " 'to comport with the original intent of the no-fault law' " (quoting *Statement to Assembly Bill No. 3981,* at 405 (Oct. 4, 1983), *reprinted in N.J.S.A.* 17:28–1.1)).

ORRG does not deny that the policy it sold to 4M conforms with *N.J.S.A.* 17:28–1.3. It includes an endorsement asserting that ORRG "will pay Pedestrian Personal Injury Protection benefits pursuant to *N.J.S.A.* 17:28–1.3," and the text of the statute is set forth immediately following that promise to pay.

B

ORRG's contractual obligation for the benefits at issue raises a preliminary question—whether ORRG's argument concerning the State's alleged violations of LRRA should be considered. For the reasons that follow, we address ORRG's allegations.

Generally, an insurer is bound by the terms of its policy even if the policy provides benefits the law does not require. *See, e.g., Capelli v. Twin City Fire Ins. Co.,* 209 *N.J.Super.* 552, 555, 508 *A.*2d 269 (App.Div.1986) (holding insurer to its contract providing more generous coverage than required by law despite an amendment). But ORRG's challenge is based on LRRA, which exempts a risk retention group from any state law that would regulate its operation, "directly or indirectly," except as authorized by LRRA. 15 *U.S.C.S.* § 3902(a)(1).

Because insurance policies omitting mandatory coverage are amended to include it, *Allstate Ins. Co. v. Malec,* 104 *N.J.* 1, 6, 514 *A.*2d 832 (1986), *N.J.S.A.* 17:28–1.3 indirectly regulates risk retention groups by requiring them to include the requisite pedestrian-PIP coverage or refrain from issuing liability insurance policies on motor vehicles. Thus, LRRA's prohibition is implicated, and it is appropriate to consider whether LRRA permits a state to require this coverage in ORRG's policy. Moreover, ORRG's contractual obligation has no bearing on its allegation of discriminatory exclu-

sion from the payment of benefits available to PLIGA members and not ORRG.

## III

We turn to consider ORRG's primary claims: 1) that LRRA exempts risk retention groups from *N.J.S.A.* 17:28–1.3; and 2) that New Jersey violates LRRA by discriminating against risk retention groups.

## A

Background information on the purpose and history of LRRA that informs our discussion of the issues is provided in *Aftab v. N.J. Property–Liability Ins. Guar. Ass'n,* 386 *N.J.Super.* 41, 898 *A.*2d 1041 (App.Div.), *certif. denied,* 188 *N.J.* 357, 907 *A.*2d 1016 (2006). " '[A] risk retention group is simply a group of businesses or others who join together to set up their own insurance company only to issue insurance policies to themselves. . . .' " *Id.* at 50, 898 *A.*2d 1041 (quoting H.R. Rep. No. 99–685 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5304, 5305–06). Congress initially authorized risk retention groups to provide product liability insurance, but in 1986 "expand[ed] the scope of commercial liability insurance coverage available through risk retention groups." *Id.* at 49, 898 *A.*2d 1041.

Through LRRA and its predecessor—the Product Liability Risk Retention Act of 1981—Congress intended risk retention groups to "provide a vehicle by which [commercial entities] could obtain [commercial] liability insurance at lower rates." *Id.* at 48, 898 *A.*2d 1041. Congress intended to achieve that cost reduction "by exempting risk retention groups from many state laws and regulations that prohibited or restricted risk retention groups." *Ibid.* While LRRA exempts risk retention groups from many state laws regulating insurance, it does not exempt the groups from all such laws. *See* 15 *U.S.C.S.* § 3902.

## B

■ This case requires an interpretation of LRRA, which is a question of law subject to de novo review. *In re Liquidation of Integrity Ins. Co.,* 193 *N.J.* 86, 94, 935 *A.*2d 1184 (2007). The court's role is to construe LRRA to effectuate the intent of Congress, and the inquiry begins with LRRA's language, which is given its ordinary meaning and read "with related provisions so as to give sense to the legislation as a whole." *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). Because LRRA is a federal law, "the interest of comity and the benefits of uniform application require us to consider and give due deference to decisions of federal and state courts interpreting the statute." *Fletcher v. Cessna Aircraft Co.,* 412 *N.J.Super.* 530, 534, 991 *A.*2d 859 (App.Div.2010).

An understanding of LRRA's structure is critical to an interpretation of its separate provisions. Some of LRRA's provisions—the exemptions—protect risk retention groups from state law. Other provisions of LRRA—the exceptions—restrict the protection afforded risk retention groups by the exemptions and permit state regulation. Stated differently, the exceptions authorize state regulation despite an exemption that would otherwise insulate a risk retention group from state law.

The exemptions from state law are stated in subsection (a) of § 3902:

(a) **Exemptions from State laws, rules, regulations, or orders.**

*Except as provided in this section,* a risk retention group is exempt from any State law, rule, regulation, or order *to the extent that such law, rule, regulation, or order would—*

(1) *make unlawful, or regulate,* directly or indirectly, the *operation* of a risk retention group *except that* ... *any State may require such a group to—*

.... [3]

---

[3] The exceptions stated in subparagraphs (A)-(I) of this paragraph are omitted here and discussed later.

> (2) *require or permit* a risk retention group *to participate in any insurance insolvency guaranty association* in which an insurer licensed in the State is required to belong;
>
> (3) ....
>
> (4) *otherwise, discriminate against a risk retention group or any of its members,* except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations.
>
> [15 *U.S.C.S.* § 3902(a) (emphasis added).]

Subsection (b) of § 3902 makes it clear that the foregoing exemptions apply to "liability insurance coverage provided by a risk retention group." 15 *U.S.C.S.* § 3902(b)(1). Thus, absent an exception and read together, subsections (a)(1) and (b)(1) would exempt a risk retention group from a state law such as *N.J.S.A.* 17:28–1.3 that mandates coverage in a policy of liability insurance.

■ Section 3905, which clarifies the scope of permissible state authority under LRRA, precludes that reading. LRRA's exceptions permit state regulation despite an exemption, and § 3905 has that effect:

> (a) *No exemption from State motor vehicle no-fault and motor vehicle financial responsibility laws.* Nothing in [LRRA] shall be construed to exempt a risk retention group or purchasing group authorized under [LRRA] *from the* policy form or coverage *requirements of any State motor vehicle no-fault* or motor vehicle financial responsibility *insurance law.*
>
> [15 *U.S.C.S.* § 3905(a) (emphasis added).]

ORRG's objection to *N.J.S.A.* 17:28–1.3 is defeated by § 3905(a). As previously noted, the mandate in *N.J.S.A.* 17:28–1.3 for pedestrian-PIP benefits is part of New Jersey's no-fault motor vehicle insurance law. *State Farm, supra,* 146 *N.J.* at 12, 679 *A.*2d 620. Section 3905(a) plainly states that LRRA does not exempt risk retention groups from the coverage requirements of a state's no-fault motor vehicle insurance law, and it also precludes a construction of any other provision of LRRA to prohibit such state regulation. The plain meaning of § 3905(a), which accounts for the remainder of LRRA as well, ends the inquiry.

Despite the clarity of § 3905(a), ORRG relies upon subsection (b) of § 3905. That provision states that the "exemptions provided [in LRRA] shall apply only to" a risk retention group's

"liability insurance" and precludes a construction of any part of LRRA to permit a risk retention group to provide "any other line of insurance." 15 *U.S.C.S.* § 3905(b).

ORRG argues that the pedestrian-PIP coverage mandated by *N.J.S.A.* 17:28–1.3 is "First Party medical insurance provided, regardless of fault, that is not dependent upon an assessment as to the liability of the parties involved." As we understand this objection, ORRG argues that pedestrian-PIP coverage is not liability insurance ORRG may provide.

■ Without question, a state law compelling action prohibited by federal law is preempted. *Crosby v. Nat'l Foreign Trade Council,* 530 *U.S.* 363, 372, 120 *S.Ct.* 2288, 2294, 147 *L.Ed.*2d 352, 361 (2000). But ORRG provides no authority or argument supporting its characterization of pedestrian-PIP coverage as a line of insurance other than liability insurance. True, the Legislature has recognized the relationship between PIP coverage and the cost of health insurance. *See N.J.S.A.* 39:6A–1.1b. That nexus, however, does not make pedestrian-PIP benefits a "line of insurance" other than liability insurance. The pedestrian-PIP coverage mandated by *N.J.S.A.* 17:28–1.3 is a component of a policy of liability insurance covering, among other things, liability for "bodily injury" as part of this state's no-fault motor vehicle insurance law. *N.J.S.A.* 17:28–1.3; *State Farm, supra,* 146 *N.J.* at 12, 679 *A.*2d 620.

For all of the foregoing reasons, we reject ORRG's claim that LRRA exempts it from complying with *N.J.S.A.* 17:28–1.3.

C

■ We also reject ORRG's claim that New Jersey discriminates against risk retention groups by barring their participation in PLIGA's program for payment of pedestrian-PIP benefits. Section 3902(a)(4) exempts risk retention groups from a state regulation to the extent it would "otherwise, discriminate against a risk retention group or any of its members."

Federal courts have interpreted LRRA's prohibition against discrimination and made it clear that the burden of showing discrimination in violation of LRRA is on the risk retention group. The United States Court of Appeals for the Ninth Circuit has "held that insurers could prove that a state law discriminated in violation of § 3902(a)(4) by showing that a law differentiates between insurance providers 'without an acceptable justification.' " *Alliance of Nonprofits for Ins. v. Kipper,* 712 *F.*3d 1316, 1322 (9th Cir.2013) (quoting *Nat'l Warranty Ins. Co. v. Greenfield,* 214 *F.*3d 1073, 1081 (9th Cir.2000)). The United States Court of Appeals for the Second Circuit has concluded that a claim of discrimination requires "a showing that the contested act was done with the intent to discriminate against" a risk retention group or "a showing of 'disparate impact'—that is to say, a harmful effect of a generally applicable policy that is disproportionately visited upon a protected class," without regard to intent. *Preferred Physicians Mut. Risk Retention Grp. v. Pataki,* 85 *F.*3d 913, 918 (2d Cir. 1996).

ORRG has not made the showing required under either standard. ORRG's complaint is that PLIGA pays pedestrian-PIP benefits due under policies of motor vehicle liability insurance issued by commercial carriers in conformity with *N.J.S.A.* 17:28–1.3 but does not pay those benefits on such policies issued by a risk retention group.

The basis for the different treatment is explained in the record, which includes a March 1, 2006 notice from the Director of the Division of Insurance in the Department of Banking and Insurance to "All Risk Retention Groups Writing Motor Vehicle Insurance in NJ." In that notice the Director explains that the different treatment of commercial insurers and risk retention groups is a function of PLIGA's authority to assess commercial insurers who are members of PLIGA to cover its obligations—authority PLIGA does not have over risk retention groups whose membership in PLIGA is barred by federal law.

Applying LRRA, this court has held that "an insurer registered in New Jersey solely as a risk retention group is not covered by PLIGA." *Aftab, supra,* 386 *N.J.Super.* at 44, 898 *A.*2d 1041. LRRA exempts risk retention groups from any state law that would "require *or* permit a risk retention group to participate in any insurance insolvency guaranty association in which an insurer licensed in the State is required to belong." 15 *U.S.C.S.* § 3902(a)(2) (emphasis added).

Although PLIGA has other responsibilities, *N.J.S.A.* 17:30A–2.1, PLIGA's primary role is minimization of " 'loss to claimants or policyholders because of the insolvency of an insurer.' " *Carpenter Tech. Corp. v. Admiral Ins. Co.,* 172 *N.J.* 504, 515, 800 *A.*2d 54 (2002) (quoting Post–Assessment Prop. & Liab. Ins. Guar. Ass'n Model Act, *reprinted in NAIC Model Laws, Regulations and Guidelines,* at 540–1, § 2 (1995)). Consequently, in conformity with LRRA's prohibition, New Jersey makes a risk retention group ineligible to "become a member of, contribute to, or derive any benefit from [PLIGA]." *N.J.S.A.* 17:47A–9.

ORRG's claim, as we understand it, is that PLIGA discriminates by denying risk retention groups limited membership in PLIGA— membership that would permit them to enjoy PLIGA's benefits with respect to pedestrian-PIP benefits without participating in the insolvency fund. An entitlement to limited participation is not supported by any provision of LRRA and is undermined by the Act's legislative history.

Congress " 'inten[ded] that States be precluded from requiring or permitting risk retention groups to participate *either directly or indirectly* in an insurance insolvency guaranty association.' " *Aftab, supra,* 386 *N.J.Super.* at 50, 898 *A.*2d 1041 (emphasis added) (quoting H.R.Rep. No. 99–685 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5304, 5314). The ban was intended to give risk retention groups " 'a strong incentive ... to set adequate premiums and establish adequate reserves.' " *Id.* at 49, 898 *A.*2d 1041 (quoting H.R.Rep. No. 99–685 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5304, 5314). That goal would be implicated if risk

retention groups were permitted to issue policies with coverage not paid by the group's premiums.

As explained in *Aftab*, the ban against participation in an insolvency guaranty association is best viewed "as part of the trade-off"—in exchange "for limited State regulation[,] risk retention groups were 'on their own' if they became insolvent." *Ibid.* Insolvency funds are not available to risk retention groups, and states cannot require or allow them "to contribute to guaranty associations." *Ibid.* The trade-off is "part of [LRRA's] overall scheme to keep costs down." *Ibid.*

In order to show that New Jersey is discriminating against risk retention groups contrary to LRRA, ORRG would have to demonstrate how limited participation in those benefits and payment of the accompanying assessments could be accomplished without indirectly contributing to the solvency of other insurers and, thereby, running afoul of § 3902(a). ORRG has made no effort to demonstrate how this could be done, and none is apparent to us.

The assessments paid by PLIGA's members cover several of PLIGA's obligations. Pursuant to *N.J.S.A.* 39:6–63(d), PLIGA must "calculate the probable amount which will be needed to carry out its responsibilities" under several statutes, including *N.J.S.A.* 39:6–86.1 (which covers specified uninsured claims, including pedestrian-PIP claims that would be payable pursuant to *N.J.S.A.* 17:28–1.3 if a policy were in place), *N.J.S.A.* 39:6–86.7 (which includes claims payable to a pedestrian injured by an automobile) and *N.J.S.A.* 39:6–69 (which covers specified unpaid judgments). PLIGA must assess the "probable amount needed to carry out" those responsibilities "against insurers for that year's contribution to the fund." *N.J.S.A.* 39:6–63(d); *see also N.J.S.A.* 17:30A–8(a)(3) (requiring PLIGA to "[a]ssess member insurers in amounts necessary to pay" designated obligations and authorized expenses, and providing for the assessments "in the proportion that the net direct written premiums of the member insurer ... bears to the net direct written premiums of all member insurers").

Because ORRG presents no argument as to how a risk retention group could participate in PLIGA's payment of pedestrian-PIP benefits on equal footing with PLIGA members without indirectly participating in and funding functions related to the insolvency guaranty association, it fails to show that New Jersey discriminates against these groups in any manner other than that required by § 3902(a)(2).

In sum, the non-discriminatory explanation for PLIGA's assessment and responsibility for pedestrian-PIP benefits is grounded in LRRA, and, for that reason, it is "an acceptable justification." This justification precludes any inference of discriminatory intent in violation of LRRA. And, ORRG has not provided any evidence of disparate impact. In this circumstance, proof of disparate impact would require a showing that ORRG's complaint is about something that is not part of the trade-off LRRA requires.

ORRG also attempts to bolster its claim of discrimination by relying upon an exception to LRRA's exemption from state laws. The argument does not require extended discussion. Section 3902(a)(1)(C) permits a state to allow a risk retention group "to participate, on a nondiscriminatory basis, in any mechanism established or authorized under" state law to equitably apportion "liability insurance losses and expenses incurred on policies written through such mechanism." Setting aside the fact that ORRG's policy was mandated by statute, not written through a "mechanism" to equitably apportion losses, § 3902(a)(1)(C) neither compels a state to permit such participation nor suggests that a state discriminates by foreclosing a risk retention group's participation.

For all of the foregoing reasons, we reject ORRG's claim that New Jersey discriminates against risk retention groups in violation of the LRRA.

IV

ORRG also urges reversal on the ground that AIG's claim for reimbursement was filed beyond the time permitted by

*N.J.S.A.* 39:6A–13.1.[4] This statute applies to claims made by an insured or an insured's estate under policies of "automobile insurance" issued pursuant to *N.J.S.A.* 39:6A–3.1, –3.3, –4 and –10. *N.J.S.A.* 39:6A–13.1. It does not apply to claims under a liability insurance policy on a motor vehicle issued in conformity with *N.J.S.A.* 17:28–1.3. *Johnson v. Republic W. Ins. Co.,* 391 *N.J.Super.* 194, 201, 917 *A.*2d 803 (App.Div.), *amended on other grounds,* 396 *N.J.Super.* 457, 934 *A.*2d 684 (App.Div.2007). ORRG's argument—based solely on AIG's status as its insured's subrogee—lacks sufficient merit to warrant any further discussion in a written opinion. *R.* 2:11–3(e)(1)(E). *See State Farm, supra,* 146 *N.J.* at 9, 679 *A.*2d 620 (noting that *N.J.S.A.* 39:6A–9.1 provides a primary right of reimbursement to an insurer not linked to any subrogation right); *N.J.S.A.* 39:6A–9.1 (providing a limitations period, with which AIG complied,[5] commencing on the date the claim is filed, not the date of the injury); *N.J. Mfrs. Ins. Grp. v. Holger Trucking Corp.,* 417 *N.J.Super.* 393, 394–95, 9 *A.*3d 1095 (App.Div.2011) (holding that, for purposes of *N.J.S.A.* 39:6A–9.1, a claim is filed when the insured submits a claim form requested by the insurer).

Affirmed.

---

[4] AIG urges us not to consider this issue because it was not raised in the trial court. It was raised in ORRG's answer and its response to a motion, and the trial court addressed the issue at oral argument on AIG's final motion.

[5] Guthrie filed his claim for pedestrian-PIP benefits with AIG on April 11, 2008, and AIG filed its complaint on March 24, 2010.